JOSEPH P. VEALE, Respondent, v. L. R. GREEN, Appellant.

Kansas City Court of Appeals, March 7, 1904.

1. **REAL ESTATE BROKER: Principal and Agent: Demurred Evidence: Instructions.** On a review of the evidence it is held to be sufficient to send to the jury the question of agency between broker and landowner, and that the instructions properly submitted the case.

2. ——: ——: **Evidence: Letters.** On an issue of agency certain letters are held admissible since they show the situation concerning the matters up to the final employment.

3. ——: ——: **Offer: Acceptance: Evidence.** The evidence is held sufficient to warrant the finding of acceptance of an offer made by a landowner to a broker.

4. **APPELLATE PRACTICE: Evidence: Finding.** Although there. was ample evidence to have sustained the finding of the jury for the other party, the appellate court is not warranted in setting aside the verdict of the trial court.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds,* Judge.

AFFIRMED.

*Thurman, Wray & Timmonds* for appellant.

(1) The letters of defendant, marked exhibits "C" and "D" were not admissible in evidence in this case. These letters were written from two to four years before the date of the contract sued on, if it be conceded such contract was ever entered into. (2) There is no substantial testimony in this record tending to support the allegation in plaintiff's petition, that, "thereafter plaintiff in pursuance of such contract and agreement between plaintiff and defendant, did procure a purchaser for said land . . . and was instrumental in

bringing about a sale of said land.'' (3) While it is true that all the instructions should be read together, yet if there is such conflict as would likely mislead or confuse the jury, such conflict constitutes error. White v. Ins. Co., 93 Mo. App. 282.

*Cole, Burnett & Moore* for respondent.

(1) It is difficult to see why the admission of these letters constituted error, and counsel's brief discloses that they are uncertain about it themselves. Thompson v. Chappell, 91 Mo. App. 303. Our position is that the contract was forming during all these years, between these two comparatively unskilled men, and that the services were likewise being rendered for which defendant agreed to pay him $320. All letters relating thereto are admissible. Hammond v. Beeson, 112 Mo. 201. (2) With only three or four brief instructions to read, there is surely no danger that the jury was confused or misled by them. When read together, as they must be, they are perfectly harmonious, and quite plain in their direction that plaintiff could recover only for what he said and did after February, 1898. The instructions are not ''inconsistent and contradictory,'' and it is well known law that the failure to embrace all the issues in one instruction is not error, if they are all embraced in the series of instructions given; even though one instruction may be slightly faulty, or incomplete. Muelhausen v. Railway, 91 Mo. 332; Crawford v. Doppler, 120 Mo. 362; Simmons v. Ingram, 78 Mo. App. 608; Knight v. Sadler Co., 91 Mo. App. 574; State v. Smith, 164 Mo. 585; Bertram v. Railroad, 154 Mo. 654; Weldon v. Railroad, 93 Mo. App. 675; Tyler v. Parr, 52 Mo. 250.

ELLISON, J.—This action is to recover commission alleged to be due plaintiff for selling a section of land in Barton county for defendant. The plaintiff recovered judgment in the trial court.

The petition declares on a contract without naming the date of such contract. But it states its terms to be that if plaintiff would procure a purchaser for the land at twenty dollars an acre defendant would pay him a commission of two and one-half per cent of the total purchase price. It then alleges that in pursuance of such contract, plaintiff did procure a purchaser and that he was instrumental in bringing about the sale.

The evidence in plaintiff's behalf tended to show that beginning back in 1893, defendant, who lived in Illinois, made plaintiff his agent to rent the land and also to sell it, though no price was named and the amount of compensation was not agreed upon. In that year a man named McClanahan was renting some land of plaintiff, and plaintiff rented the defendant's land to him, having in view, as he testified, the idea of finally selling it to him. That when defendant came to see plaintiff in Barton county in 1894, he expressed the opinion that McClanahan was too much "of a boy." But that in a day or two he came back to plaintiff and said to him that he felt better suited with his selection of McClanahan and that he had been informed that McClanahan would buy the place before he left it. Plaintiff then said to defendant that that was the reason he put him there and that if defendant did not sell the place before McClanahan got ready or able to buy, he would sell it to him. Plaintiff and McClanahan talked of the latter buying the place from time to time. And so did plaintiff and defendant, the latter frequently inquiring if plaintiff thought McClanahan would buy the place. This continued on up to February 13, 1898, the date of defendant's letter to plaintiff about his affairs in this State, in which, among other things about other matters of business between them, he stated that if plaintiff would sell the place for twenty dollars per acre he would give him two and one-half per cent commission.

Finally, in about three years after the receipt of the letter just referred to, McClanahan went to Illinois,

without plaintiff's knowledge, and bought the land of defendant direct for twenty dollars per acre. It seems that defendant was in Barton county when the sale was consummated and that after it was all settled he remarked to McClanahan that he would "now go over and pay Joe (plaintiff) and tell him I don't need him any longer." Defendant, however, contends that that remark referred to pay for other business plaintiff had done for him.

Taking the whole evidence in plaintiff's behalf and accepting it as true, as we must do in passing on the question of the court's refusal of defendant's demurrer, it is clear enough that plaintiff had a continuous permissive authority to sell defendant's land, beginning several years prior and running up to the sale. That during this time plaintiff was calculating on selling to McClanahan if it was not sold before he became ready to buy and that defendant knew of this. That plaintiff frequently talked about it with McClanahan and that it was with a view of selling to him that he first got him onto the place as a tenant, of which he informed defendant. There is no doubt that this desire and effort on plaintiff's part continued up to the time that the land was actually sold by defendant. McClanahan said that before departing for Illinois to see defendant, he had learned from plaintiff at what price the land could be had.

We have by no means overlooked the argument in defendant's behalf to the effect that there is no evidence whatever tending to show that plaintiff made any effort to sell the land after February 13, 1898, (the date of the letter stating his compensation) during the last three years preceding the sale. But we think there is. The face of the entire evidence, as given by plaintiff in his own behalf, shows that his expectations and hopes of sale and his efforts to that end, were continuous; that is to say, from time to time through the whole

period, beginning with the first authorization, and running up to the sale. There is no reasonable ground upon which to base the assertion that plaintiff's efforts ceased on and after the amount of his compensation was agreed upon, and that the three years between that time and the actual sale, were passed without further effort by him. A fair interpretation of his evidence does not justify that conclusion. It may be that plaintiff's petition held him in narrower bounds than his rights justified. It would perhaps have been better if the petition had set out the facts of the employment and final statement of compensation as they were. But taking the case, as it is, it will not do to say that there is nothing after February 13, 1898, to support plaintiff's claim.

We do not think the criticism of the instructions is well grounded. Instruction ''A,'' in view of the evidence, might be thought to be too general, or too indefinite. But it is immediately followed by instruction ''B,'' which clearly sets forth the limit of plaintiff's right to recovery.

Neither do we think that defendant's objections to the letters which he wrote to plain are meritorious. The letters show the situation and relation between the parties concerning matters directly leading up to the final letter of employment as stated in the petition. The answer denied any employment. No better proof on plaintiff's part could be made of that issue than by starting at the beginning of those matters which bore upon the question whether plaintiff was engaged to sell the land. It certainly would have been unreasonable to have held plaintiff to the one letter showing an employment which defendant denied making. Hammond v. Beeson, 112 Mo. 190, 201.

It is further suggested that there was no evidence that plaintiff accepted the terms or offer of employment made in the letter of February 13, 1898. What we have already said as to plaintiff's continued effort after

the receipt of the letter is sufficient to dispose of that objection.

In considering what we deem to be the principal question in the case we have not referred to the evidence direct and circumstantial, in defendant's behalf.   There is much in it going to show that plaintiff did not consider that defendant owed him anything for the sale of the land.   The evidence is, indeed, so strong in defendant's behalf, that had the verdict been for him no one would have thought of questioning it.   But at the same time, as we have already said, if we accept the evidence in plaintiff's behalf and reasonable inferences which may be drawn therefrom as being true, there is no authority resting in us to disturb the verdict, and the judgment is accordingly affirmed.   The other judges concur.