[Civ. No. 463.   First Appellate District.—September 21, 1908.]

## J. R. BAIRD, Respondent, v. OTTO LOESCHER, Appellant.

EMPLOYMENT OF REAL ESTATE BROKER—STATUTE OF FRAUDS—AUTHORIZATION ONLY REQUIRED—TERMS OF CONTRACT.—The statute of frauds relating to the employment of a broker to sell land only requires that the authorization to sell shall be in writing signed by the owner, and a memorandum connected therewith not containing all of the terms of the contract does not render the employment invalid.

ID.—RIGHT TO RECOVER COMMISSIONS—FINDING OF PURCHASER—ARBITRARY REFUSAL TO SELL.—When, during the limit of the authority to sell, the broker found an unobjectionable purchaser able and willing to pay the price agreed, and who offered to do so on any terms required by the owner, who, without objecting to the offer made, arbitrarily refused to sell at all, the broker has the right to recover commissions from the owner.

ID.—OBJECTION IN EMPLOYMENT TO ARMENIAN PURCHASER—ANSWER TO LETTER—TERM NOT REQUIRING WRITTEN ACCEPTANCE—ACCEPTANCE BY CONDUCT.—The objection in the authority of employment in answer to a letter stating proposed terms, that the broker might proceed to sell to anyone not an Armenian, the authority so limited did

not create a new term requiring written acceptance, but the acceptance by conduct on the part of the broker in producing a purchaser not an Armenian was sufficient.

ID.—DISTINCTIONS AS TO OFFER AND ACCEPTANCE.—There is a radical distinction in regard to communication of acceptance of an offer which requires the offeree to do something, and one which requires the offeree to promise something. In the former case, communication of acceptance is ordinarily not required, but compliance with the condition of the offer by doing the act in the way prescribed is ordinarily sufficient evidence of the acceptor's assent, and it is not necessary to show that he notified the offerer that he accepted it and would perform the condition.

ID.—AGREED TERMS OF COMMISSION—LETTERS—ACCEPTANCE BY OWNER.— When the general terms of proposed sale and the special terms of commissions on a sale were communicated in a letter by the broker to the owner, a letter in answer thereto in express regard to the letter, authorizing the broker to proceed to sell to anyone not an Armenian, was tantamount to an express acceptance of the proposed terms, including the rate of commissions upon a sale to any person other than an Armenian.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

A. M. Drew, and J. R. Webb, for Appellant.

Geo. W. Cartwright, for Respondent.

KERRIGAN, J.—This action is brought on an express contract to recover commissions alleged to be due plaintiff from defendant for the sale of certain real property in Fresno county. The plaintiff recovered judgment. This appeal is from that judgment and from an order denying defendant's motion for a new trial.

At the trial certain letters and an unsigned agreement inclosed in and referred to in one of the letters were admitted in evidence over the objection and exception of defendant. The sufficiency of these letters and of the unsigned agreement to constitute a contract is the subject of this controversy.

The letters and agreement (unsigned) in question are as follows:

"May 19, 06.

"Mr. Loescher, Fowler, Cal.

"My dear Sir: The land matter seems to be progressing but rather slowly. . . . In order to be properly prepared to handle them promptly and securely by being ready to take a deposit at once, if a favorable decision is made, I would request that you properly authorize me by filling out the little card agreement herewith enclosed, and send back by this evening's mail on the train coming north about 7.15 at Fowler.

"Very truly yours,<br>
"J. R. BAIRD,<br>
"For Fresno Land Company."

The card agreement inclosed and referred to in the above letter reads as follows:

"Fresno, Cal. May 19, 1906.

"Fresno Land Co.—I hereby authorize you to sell for me, and to receive any deposit for the sale of the following described property . . . This authorization is exclusive, and is to remain in force, irrevocable, one month (10) days from date, and thereafter until ten days after receipt of notice in writing to cancel. Price of land to be $10,000, or any less sum hereafter agreed to by me, on the following terms: $4,500 cash on date of sale, and $................in.............. equal annual payments, with interest at 8 per cent per annum, for which I agree to pay five per cent commission, and in event of a sale I bind myself to execute and deliver the necessary conveyances of title, and to furnish abstract showing good title to said property to date of sale.

"........................ (seal)"

In reply to the foregoing communications Mr. Loescher sent the following letter:

"Fowler, May 19, 1906.

"Mr. J. R. Baird, Fresno.

"Dear Sir: Your letter received, and will say in regards to it that you can sell the place to anyone you can, but not to an Armenian, as my wife says she will not sign a deed to an Armenian. If I can get all cash from them I may sell, but not otherwise, as I have had dealings with them, and I don't care to have any more.

"Yours truly,<br>
"OTTO LOESCHER."

After the receipt of this letter from the defendant plaintiff proceeded to effect a sale of the property, and thus to perform his part of the contract, with the result that by June 21st, and within the life of the contract, he had found a purchaser, and wrote the defendant as follows:

"June 21, 1906.

"Mr. Otto Loescher, Fowler, Cal.

"Dear Sir: Following the instructions contained in your letter of May 19, 1906, I have sold your 40-acre vineyard for $10,000, and have a deposit of $250 awaiting on an abstract. Please come to Fresno Monday, the 25th instant, and arrange details.

"Very truly yours,
"J. R. BAIRD,
"Agent, 1823 Tulare street."

The same day, June 21st, defendant by letter refused to sell the land, saying that he had changed his mind, and that the property was off the market. The uncontradicted testimony of the proposed buyer, one Droge, is that he was ready, able and willing to pay the defendant the stipulated price for the property on any terms of payment which he, defendant, would insist upon; that he so informed defendant, who, making no objection to the offer, refused to consider the proposition, and rejected it.

Appellant's (defendant's) first proposition is that the contract sued upon is insufficient under the statute of frauds, because of the blank spaces therein with reference to the terms and amounts of payments. If this were an action between the owner and the buyer to compel a conveyance, it might be contended successfully that the blank spaces not being filled in, it did not as a memorandum contain all the terms of the contract, and hence was void under the statute of frauds. But in this case, it being an action by the broker against the owner, and the statute of frauds requiring only that the authorization to sell shall be in writing (*Toomey* v. *Dunphy,* 86 Cal. 642, [25 Pac. 130]; Civ. Code, sec. 1624, subd. 6), and as the proposed buyer was able and willing to pay the agreed price, and offered to do so on any terms the owner might dictate—under these circumstances it seems plain to us that the contention of appellant is wholly without merit.

If we understand him correctly, appellant next asserts that the letter of appellant of May 19th, stating that respondent might sell the property to anyone except to an Armenian, introduced a new term into the negotiations, which amounted to a rejection of respondent's offer, and a counter-proposition which required acceptance by the respondent in order to result in a binding contract between the parties. He further asserts that there was no acceptance of the counter-offer, and that therefore no contract resulted. In this he is wrong. There was not, it is true, an acceptance in writing, nor was it necessary that there should have been. It might have been indicated by acts, as indeed it was in this case, for the respondent not only showed his assent to the new term by conduct, but actually complied with it by producing a purchaser not an Armenian. The rule controlling here is thus laid down in 9 Cyc. 270: "There is a radical distinction in regard to communication between offers which ask that the offeree shall do something, and offers which ask that the offeree shall promise something. In offers of the former kind communication of acceptance is ordinarily not required . . . where the offer is to do something if the offeree will not merely promise to do but do something, compliance with the condition of the offer by defendant by doing the act in the way prescribed is ordinarily sufficient evidence of the acceptor's assent, and it is not necessary to show that he notified the offerer that he accepted the offer and would perform the conditions."

In *Veale* v. *Green,* 105 Mo. App. 182, [79 S. W. 731], it is said: "Evidence that P. continued from time to time to make efforts to sell defendant's land after defendant offered him a commission for making the sale was sufficient to sustain a finding that he accepted the offer."

There remains one other point to be considered. Appellant concedes that the letters constitute a sufficient statement of the facts of employment to satisfy the statute of frauds; and he also concedes that if this were an action on an implied contract respondent would have been entitled to recover the reasonable value of his services (*Toomey* v. *Dunphy, supra*), but he insists that the letters relied upon do not state the compensation to be paid the broker, and that therefore this action. being on express contract, no recovery can be had. Appellant had read and knew the terms of the proposed contract and the contents of the letter with which the contract was inclosed.

In reply, referring to them, and having, of course, their contents in mind, he in effect said: "Proceed, but don't sell to an Armenian." With the exception just noted (not to sell to an Armenian) the reply of the defendant was, we think, tantamount to an express acceptance of each of the terms of the contract, including the rate of commission. "A contract is to be construed as a whole (and) terms which can be inferred from a consideration of the entire instrument are as much a part of the contract as if expressly set forth there." (2 Page on Contracts, sec. 1118, p. 1740.)

The judgment and order appealed from are affirmed.

Hall, J., and Cooper, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 19, 1908.