[Civ. No. 13700. Second Dist., Div. One. Dec. 14, 1942.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Plaintiff, v. NATIONAL GUARANTY LIFE COMPANY (a Corporation), Defendant.

H. F. MILE, Appellant, v. A. CAMINETTI, JR., as Insurance Commissioner, etc., Respondent.

Wm. P. Mealey for Appellant.

William Paul Wood and M. W. Young for Respondent.

YORK, P. J.—This is an action by appellant real estate broker to recover a commission alleged to be due him from National Guaranty Life Company, the purchaser of a piece of real property.

The record reveals that on April 2, 1940, one C. W. Harrison, as president of National Guaranty Life Company, executed and delivered to appellant Mile the following document written on letterhead of said Life Company:

"Los Angeles, California, Apr. 2, 1940
Mr. H. F. Mile, 1128 No. LaBrea, Los Angeles, California.
Dear Sir: This will be your authority to represent us in the purchase of the property known as the Insurance Exchange Building at Ninth and Olive Streets in Los Angeles, meaning the purchase of all rights of the stockholders in the building whereby same can be delivered to us in fee and free and clear of any encumbrances, in the total aggregate sum of $325,000.00 to be paid into escrow upon demand upon us.

"The foregoing offer to remain in force and effect until withdrawn by us in writing.

"This is to further advise you that we have this date cancelled any authority any other broker may have had to represent us in the purchase of said property.

"Yours very truly, C. W. Harrison, President."

At the time this document was executed, said Insurance Exchange Building was owned in fee by the Blanchard Investment Company, subject to an outstanding leasehold interest owned by the Ninth and Olive Building Company. Early in 1941, with the approval of the respondent Insurance Commissioner, who on August 15, 1940, had been appointed conservator of National Guaranty Life Company, the building was purchased by said company for the amount

specified in the document of April 2, 1940, to wit: $225,000 for the fee and $100,000 for the leasehold.

Appellant's demand for payment of the commission, which he claimed was due him on account of said purchase, having been refused by respondent conservator, he instituted the instant proceeding and now appeals from the judgment rendered therein in favor of said conservator.

It was stipulated during the trial, and found by the court, that appellant performed the usual services of a broker in the transaction whereby the Insurance Exchange Building was sold and the same was purchased by the National Guaranty Life Company.

It was further found by the court that:

"12. At no time prior to, or on April 2, 1940, or any time thereafter, was any written or oral agreement made or entered into between H. F. Mile and National Guaranty Life Company, or its authorized agent, in which said National Guaranty Life Company agreed to pay any commission or compensation whatsoever to said Mile in connection with the purchase of said Insurance Exchange Building by National Guaranty Life Company.

"13. H. F. Mile, with knowledge of the National Guaranty Life Company and A. Caminetti, Jr., Insurance Commissioner of the State of California, as Conservator of National Guaranty Life Company, was paid and received commissions from the Blanchard Investment Company for services rendered by Mile in connection with the sale of the Insurance Exchange Building to National Guaranty Life Company."

Appellant urges that the document of April 2, 1940 created the relationship of principal and agent between the National Guaranty Life Company and himself, and included in said agency agreement was an implied covenant to pay him reasonable compensation for his services, which implication could not be overcome by parol testimony.

Respondent, on the other hand, argues that the letter of April 2, 1940 constitutes authority merely to transmit an offer to purchase; that the presumption of payment arises only where the character of the service is such that compensation is reasonably within the contemplation of the parties; that it is customary for commissions to be paid by the seller rather than the buyer of real property, and in the absence

of an express promise to pay a commission, the rule of custom is applicable.

Subdivision 5, section 1624 of the Civil Code provides that "An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" is invalid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged.

It is settled law that where work is done under an express contract which does not specify the compensation to be paid, the law implies a promise to pay what the service is reasonably worth. (§ 1611, Civ. Code.) "Thus an agent authorized to negotiate a sale of real property is entitled to a reasonable compensation for his services where no agreement was made as to his commission." (27 Cal.Jur. 207, 208, citing *Muncy* v. *Thompson,* 26 Cal.App. 634 [147 P. 1178].)

The Muncy case involved a written instrument authorizing a real estate broker to negotiate an exchange of properties. It was there stated on page 636: "The authorization being in writing, the fact that it did not specify the commission to be paid for the service rendered did not subject it to the objection that it was void under the provisions of subdivision 6 [now 5], section 1624 of the Civil Code. In the absence of any agreement as to commission, the agent, if authorized in writing to negotiate a sale of real estate, is entitled to a reasonable compensation for his services. Here it was agreed that plaintiff should receive the commission as per verbal agreement, which verbal agreement was clearly and properly established by parol evidence."

In *Moore* v. *Borgfeldt,* 96 Cal.App. 306, 310 [273 P. 1114], where it was contended that the memorandum was insufficient written authorization under subdivision 5, section 1624 of the Civil Code and therefore should be excluded from evidence, it was held that the statute of frauds does not require such a writing to be a complete contract, but only a note or memorandum, provided it shows authority to act; and when this requirement is met in connection with a definite piece of property, the amount of compensation and even the agreement to pay a commission and other terms may be shown by parol.

"It is not essential that all the terms of the employment

be expressed in writing, if the fact of employment is sufficiently certain. Thus, the broker's contract need not show the amount of compensation to be paid. This can be shown by a collateral oral agreement, or will be construed as a reasonable amount.'' (4 Cal.Jur. 559.) Parol evidence is admissible to clear up an ambiguity in the description of the property which is the subject of the agency, or the amount of compensation agreed upon. (4 Cal.Jur. 631, citing *Daniel* v. *Calkins,* 31 Cal.App. 514 [160 P. 1082].) See, also, *Pearce* v. *Underwood,* 29 Cal.App.2d 282 [84 P.2d 244].

Accordingly, the trial court committed no error when it permitted appellant to testify to the effect that Mr. Harrison, the president of National Guaranty Life Company, promised to pay him a commission for his services, nor in permitting respondent to rebut such testimony and introduce in evidence the letter of November 18, 1940, in an attempt to show that appellant never expected to receive a commission from the purchaser of the property but expected to, and did, receive a portion of such commission from the seller.

Before a contract may be implied, ''it must be determined as a question of fact, whether the parties acted in such a manner as to provide the necessary foundation for it, and evidence may be introduced to rebut the inferences and show that there is another explanation for the conduct.'' (*Silva* v. *Providence Hospital of Oakland,* 14 Cal.2d 762, 774 [97 P.2d 798].)

Appellant testified that subsequent to April 2, 1940, he had a conversation with Mr. Harrison, the president of National Guaranty Life Company, in which he told the latter that ''I had learned through Mr. Booth of the Title Insurance and Trust Company that the 9th and Olive Building Company would not pay a commission on that building; that I expected him (Harrison) to pay the commission. Q. What did he say? A. He said—these are his exact words—he said, 'Mr. Mile, I am getting an appraisal made by the State. I ought to have that in the next couple of days, and when that appraisal comes in I will be prepared to put up $10,000.00, $5,000.00 on the fee, and $5,000.00 on the building, and until that appraisal comes in we might as well forget about it.' As far as the commission, he said, ' I don't want this deal to fall through,' and he further added that he didn't expect

to pay the full commission, and I left his office . . . that was the last conversation . . . and the only one.''

Mr. Harrision testified with respect to the above conversation: ''Q. (By Mr. Young): Mr. Harrison, do you recall the occasion subsequent to April 2nd, 1940, when Mr. Mile advised you, or stated to you that the owners of the leasehold would not pay a commission? Do you remember of him so informing you? A. Yes, I remember that. Q. Was that subsequent to April 2nd, 1940? A. Yes, it was. Q. Did he, in such conversation, state that the brokers would expect the National Guaranty to pay such commission? A. No, he did not. Q. Did he ask for payment of his commission on the purchase by National Guaranty of the leasehold? A. I would not be sure. To my recollection I think he did ask that we pay the commission. Q. Can you tell us approximately when the conversation was, and who was present? A. I don't recall that anyone was present except Mr. Mile and myself. THE COURT: What did you say in response to that? A. I told Mr. Mile we were buying the property and would not pay any commission in the deal at all.''

In support of their contention that neither party to the instrument of April 2, 1940, contemplated the payment of a commission, respondents introduced into evidence the following letter:

''(On letterhead of H. F. Mile Company, Licensed Real Estate Brokers, 1128 N. LaBrea Ave., Los Angeles, Cal., GL 3323)

''November 18, 1940

Hon. A. Caminetti, Insurance Commissioner, 621 South Hope Street, Los Angeles, California. Dear Sir: Some time ago you took over the National Guaranty Life Insurance Company with offices in the Insurance Exchange Building, Ninth and Olive Streets, this city. For some time prior to the date when you assumed jurisdiction of the affairs of this corporation, I had been representing said company in a transaction involving the purchase of the said Insurance Exchange Building by such insurance company, and the escrow involving said transaction was about to be closed at the time you took over the company. This action on your part necessarily prevented a consumation [sic] of the transaction.

''The land and the building located thereon were under

different ownerships and a great amount of time and effort was expended by the agents in the transaction in consummating the same. The owner of the building was not paying any commission for the sale thereof, but the owner of the land was. I was to share in the commission being paid by the owner of the land, and this fact was known to my principal, the National Guaranty Life Insurance Company. In view of the fact that you are now handling the affairs of the said National Guaranty Life Insurance Company, I also advise you of this fact.

"The owner of the land will naturally be under no obligation to pay any commission for the sale thereof if the transaction is not closed because of the fault of the purchaser; and your delay in closing the transaction is not only causing the real estate agents great inconvenience, but is also actually jeopardizing the possibility of their ever collecting any commission from the landowner because there is always the possibility of the owners of the property withdrawing from the deal.

"Anything that you can do to bring this matter to a conclusion will be greatly appreciated.

"Very truly yours, H. F. MILE."

The excerpts from the testimony of the parties hereinbefore set out, reveal the conflicting nature of the evidence adduced at the trial herein. Suffice to say that the question presented to the court was one of fact, and that the evidence presented was sufficient to support the findings and judgment.

For the reasons stated, the judgment is affirmed.

Doran, J., and White, J., concurred.