Action by W.L. Linton against J.E. O'Bryan to recover a real estate broker's commission. From an adverse judgment, defendant appeals.
Affirmed.
The appellee, a real estate broker, was awarded a judgment for a commission of $500 alleged to have been earned by him pursuant to his employment by the appellant to "sell" the latter's house and lot for $5,000 exclusive of any commission, which was to be added to the sale price. As a result of appellee's efforts a certain man and his wife signed an instrument, agreeing to buy the property for $5,500, payable $3,500 in cash and $2,000 by the assumption of an outstanding mortgage. The paper was designed to be signed also by the owner, and bore a receipt for a down payment of $350. Provisions were incorporated for the proration of taxes, the furnishing of an abstract by the seller, the curing of any defects in the title that might appear; also, for the return of the deposit if the title should not be perfected by the one, and for the retention of the deposit if the sale should not be consummated by the other.
From a perusal of the record and briefs it seems that the appellant's defense in the trial court and his assault on the judgment here centered on discrepancies between the contract of sale alleged to have been authorized when the appellee was employed and the one eventually executed by the buyers because, according to the declaration, the place was to be sold furnished, while the proof indicated that it was sold partially furnished; also because the instrument signed by the purchasers contained the provisions about the abstract, the curing of any flaws in the title that might be present, and amount of the cash payment, its retention or return, and so on, although there was no reference to these when the property was listed for sale with the appellee.
We see no need to dwell on the first of these because not only would any such difference between the actual sale of a part of the furniture instead of the whole redound to the advantage of the appellant, but there was no mention of furniture in the contract of sale anyway. The other provisions of this contract, signed by the purchasers but never executed by the seller, were normal factors in such a transaction, and even though none of them may have been approved or even mentioned at the time of the initial employment, they were so apposite to a deal of this character as to be implicit in it.
But assuming that the appellee, realtor, had no right to commit his principal, the appellant, to these provisions, the conduct of the latter immediately before and after the attempted sale indicated that any objection to them on his part came as an afterthought.
We pause before announcing the rule of law that we consider applicable to give briefly the testimony which the jury had a right to believe in deciding this controversy. *Page 170 
On three occasions the appellant had met appellee's salesman at the premises in order that the property might be shown to persons who had evinced an interest in buying it. Evidently the appellee himself exhibited the property to the ones who were later to sign the agreement to buy, and he accepted from them the binder. He then advised his principal over the telephone about the sale, and the latter replied: "Good deal," and "It is a deal," whereupon he promised to go to the appellee's office the following morning to sign the instrument we have already described.
When he appeared, as he had promised, he brought the deed, presumably the one in which he was named as grantee when he bought the property, and told the appellee that the abstract was being held by the mortgagee, that he was going immediately to make a payment on the mortgage to reduce it to $2,000, the precise amount taken into account when the purchase price and its manner of payment were named by the appellee and accepted by the prospective purchasers, and that he would ask the mortgagee for the abstract. Thus he recognized the need of the abstract, the propriety of his furnishing it, and acceded to the amount of the purchase price to be represented by the unpaid indebtedness. Moreover, he solicited appellee's advice about reinvesting the proceeds of the sale, and they together looked at several pieces of property with that in mind. All this shows that the sale was acceptable to him.
As soon as the agreement of purchase was signed by the buyers, appellee submitted it to appellant, who after reading it made the rather surprising statement: "I would be a ____ ____ fool to go through with this deal. I have a good income." He concluded the conference with the remark: "Bill me for the commission," and departed. Although later importuned to consummate the sale, he declined, and has not discharged the obligation for the appellee's services.
It was testified that when the appellant was asked about selling the house unfurnished, inasmuch as the buyers had their own furniture, the appellant answered: "What the hell would I do with furniture?"
All this manifests that there was at the time no real question about the furniture.
In justice to the appellant we should point out that in some particulars there is conflict about the features of the employment and the actions of the appellee in carrying it out, but in many instances there is such harmony in the statements made by the appellant and the appellee as to give force to the version of the appellee.
After studying the briefs and the record we apprehend that the dispute arose over the construction of the word "net", it having been appellant's position that $5,000 net to him meant that he would not be chargeable with the cost of the abstract, documentary stamps, and so on; while the appellee contended that these were incidental to such a transaction and that when the owner listed the property at $5,000 net it meant that he should receive that amount exclusive of the commission.
Whether we assume that either interpretation is correct, the governing principle of law would not be brought into focus, for the appellant adopted his position too late.
The sale substantially conformed to the listing and, this being the case, he could not, as an afterthought, when the realtor was forced to sue for compensation for his services, first raise these so-called discrepancies as a defense to the suit. As we have seen from a resume of the testimony, he presented no such objections when he examined the proposed contract of sale, but merely stated that it would be unwise for him to effectuate the deal, and told his agent to send him a bill for the commission. If he took exception to the sale on these grounds he should have informed the realtor at the time, and when he waited until the suit was brought he should be held to have waived it, or to have become estopped.
In the case of Lizana v. Brown Realty Co., 146 Miss. 758,111 So. 867, a landowner undertook to defeat the claim for a commission because he had decided that the property was worth more than the amount for which it was offered, and when the suit was instituted by the agent, attempted to defeat it on the grounds that the terms of the contract of sale did not coincide with those agreed upon at the time of the *Page 171 
employment. The court held that the owner should have pointed out his objections in the first instance, and when he failed to do so he could not rely upon them to defeat recovery by the real estate broker.
In a similar case by the same court, Hays v. Goodman-Leonard Realty Co., 146 Miss. 766, 111 So. 869, it was held that the owner could not, in a suit by a broker to recover a commission, avail herself of the defense of objections to the terms of a proposed sale where, after the sale had been made, she decided not to consummate it because she had meanwhile supplied her needs and it was no longer necessary to convert the property into cash.
The Supreme Court of Wisconsin dealt with the subject in Moss v. Warns, 245 Wis. 587, 15 N.W.2d 786, 156 A.L.R. 598, and decided that an owner could not defeat the claim for a commission on the ground that there were discrepancies between the terms of sale in the listing and those in the offer to purchase where the objections were deferred until the suit and then for the first time advanced, the owner having merely announced that he would not carry out the contract because he had decided not to sell.
Of like import is the holding in the case of Donley v. Porter,119 Iowa 542, 93 N.W. 574, where the court announced the general rule that a party who gives a reason for his conduct on anything involved in a controversy cannot, after litigation has started, change his ground and put his conduct upon a different consideration, and applied it to a case where a real estate agent had been employed to sell property and the employer relied upon objections to a variance between the terms of sale and the terms of the listing when a suit was brought for the commission. It was the court's conclusion that the defendant was estopped to offer the belated objections as a defense.
So it is our conclusion that the defendant in this case could not plant his defense on objections which occurred to him after the suit was impending or brought, or which, if they had occurred to him, were not offered at the time the defendant refused to enter into the contract which had already been signed by the purchasers.
If any such exceptions to the sale were taken by the seller at the first opportunity they might then be obviated and the sale consummated so that the broker would not lose compensation for the services he had performed or be forced to sue for it.
Affirmed.
ADAMS, C.J., and TERRELL and BARNS, JJ., concur. *Page 303