[Civ. No. 20242. Second Dist., Div. Two. Oct. 5, 1954.]

G. H. LATHROP, Respondent, v. MRS. EBEN GAUGER, Appellant.

E. O. Leake and J. J. Leake for Appellant.

LeSage & Bowman for Respondent.

FOX, J.—In this action for recovery of a real estate broker's commission, with a cross-complaint raising issues of fraud and misrepresentation and praying for a rescission of the list-

ing, defendant appeals from a judgment in favor of plaintiff broker.

Mrs. Eben Gauger, defendant herein, was the owner of real property located at 25 Westmont Drive, in the city of Alhambra, improved with an apartment building comprising 20 units. Defendant owned the furniture in 18 of the units. These units were rented as furnished, and had been so rented for many years. Defendant had purchased the property in 1934 through the agency of Mr. Lathrop, the plaintiff. At the time of defendant's acquisition, the units were also rented as furnished apartments.

On April 17, 1952, defendant engaged the services of plaintiff to negotiate a sale of the property for $85,000. Plaintiff was given an exclusive agency for 90 days, and was to receive five per cent of the selling price as compensation for his services. The agency transaction was memorialized by an instrument in writing bearing the caption "IMPROVED PROPERTY LISTING" and was signed by defendant. The pertinent part of this document, a printed form with spaces for the entry of information descriptive of the listed property and the terms of sale, reads as follows: (Italicized words represent written entries.)

"IMPROVED PROPERTY LISTING

*Alhambra Calif. 4/17/1952*

Location *25 Westmont Dr.* *Alhambra Calif*

*2* Story *20 Unit* Lot *173.9* *139/180*

Construction *Stucco* Roof *Tile* Age *21 yrs*

Entry ___ Living *Yes* Dining *Nook* Den ___ : Price

Bed Rooms *13 units single 7 units double* : $ 85000

Baths *1-each* Showers *over* Tubs *1* Tile *Yes* : Down

Kitchen *Tile* Sink Brk. *Nook* Floors ___ : $

Basement *No* Heat *Wall* Fireplace *No* : Monthly

Porches *Balcony* Patio ___ Barbecue ___ : $

Garage *16* Driveway *off alley* Fenced *Walled* : Bonds

Fronts *East* Lawn *Yes* Sprinklers *Yes* : $ *No*

Trees *Yes* Shrubs *Yes* Sewers *Yes* : Taxes

St. Paved *Yes* C.&W. *Yes* Lights *Yes* Alley *Yes* : $

1st Loan Bal. $ *Clear* at $___ Mo. at ___% Int. :

By _____

Occupied by *Tenants* Phone Laguna *44407*"

It will be observed that no entries were placed in the blanks relating to terms of payment. The listing is also silent on

the subject of whether the furnishings in the apartments were included or excluded from the listed property.

Much of the evidence hereafter recited was admitted over defendant's objections, the invalidity of which will be discussed later in this opinion. Also, some of it was in sharp dispute, but, under elementary principles, we are bound to view it in the aspect most favorable to the prevailing party. When so viewed, the record discloses that at the time defendant authorized plaintiff to list the property for $85,000 the matter of the furniture in the property was discussed by the parties. Defendant informed plaintiff he could get an exact record of the furniture from the resident manager, Mrs. Butler. Plaintiff subsequently procured from Mrs. Butler a list of the furniture contained in every unit. Defendant also informed plaintiff of the overall income derived from the property rented as furnished units. At defendant's suggestion plaintiff contacted Mrs. Butler and received from her a list of the income obtained from each separate unit. This data was incorporated into the "set-up sheet" which plaintiff prepared covering the essentials about the property of interest to a prospective purchaser. Plaintiff then set to work to find a buyer.

Having obtained an offer of purchase from a couple named Glasser for the sum of $82,500 plaintiff arranged for a meeting between defendant and the Glassers. Defendant objected to this offer, but during the conversation she stated that because of income tax considerations "she would sell at $85,000 if they would give her 25 or 30 percent down and six percent money on the balance." Plaintiff subsequently secured an offer of $85,000 from the Glassers and orally notified defendant thereof. Defendant declared she would communicate with plaintiff after she discussed the matter with her banker, but failed to do so. Having received no word from defendant, plaintiff wrote her a letter in which he gave formal notice of the Glasser offer.

Some time after receiving plaintiff's letter referring to the Glasser offer, defendant consulted her attorney, Leroy P. Anderson, and discussed with him the listing given plaintiff. As a result of this conference, Anderson dispatched a letter to plaintiff dated June 5, 1952, which reads in part as follows:

"Dear Mr. Lathrop:

"Mrs. Eben Gauger, of 1875 Ocean Way, Laguna Beach, California, has shown me a listing which she made with you

on the 17th day of April, 1952, listing the Apartment House at 25 Westmont Drive, Alhambra, California, for $85,000.00.

"In making her listing she states that she explained to you that she wanted to sell the property so that it would be on an installment basis for Federal Income tax purposes. In other words, she listed the property at less than thirty per cent down payment for the first year. In the listing that you made you did not put down any terms.

"Due to the fact that you have failed to show any terms in the listing, it is necessary that the listing be amended to comply with Mrs. Gauger's wish. Her terms are that she is to receive $25,000.00 down payment and not over $6,000.00 per year thereafter including interest on the deferred payments at six per cent . . ."

Anderson's name was signed by his wife, who served as his secretary and to whom he dictated the letter. Anderson testified that it was his recollection that this letter was dictated in defendant's presence during their conference. Defendant testified she was not present when the letter was dictated, that she was unaware of its contents, and that she never told Anderson that she would sell the property on the terms therein indicated.

Following his receipt of this letter, plaintiff obtained a written offer to purchase executed by Martha Mannion and R. R. Mannion, her husband. This signed offer was embodied in the form of a deposit receipt, the material language of which reads as follows:

"DEPOSIT RECEIPT

San Marino California June 7, 1952.

"Received from Martha Mannion check $2500.00 as a deposit account purchase price of [property location] . . . being a 20 unit apt. bldg. 18 units are Furnished—

"*Furniture to be Included in this offer* . . . at the full purchase price of $85,000 . . . balance of purchase price and all necessary instruments to be placed in Escrow . . . *within 30 days from date,* as follows, to wit: Cash $22,500.00; Execute Trust Deed and Note for $60,000 payable $500.00 including 6% interest per mo.

"*Seller to Furnish Termite Clearance* . . .

"If buyer fails to deposit the money and his instruments and complete the purchase as provided herein, then the amount paid shall be forfeited, one-half to the real estate broker, but

not to exceed the full amount of his commission, and the balance to the seller . . ." (Emphasis added.)

Plaintiff arranged for a meeting with defendant at Anderson's office on June 9, 1952, and at that time and place he submitted the Mannion offer, together with the $2,500 deposit check to defendant for her acceptance. However, defendant, while expressing no specific objection to any of the other terms or conditions of the offer, categorically rejected it. She stated she refused to sell the property for $85,000 and desired to withdraw it from the market. The following day plaintiff sent a letter to defendant requesting that the Mannion offer, a copy of which was enclosed, be accepted. No response was forthcoming until approximately two months later (during which time plaintiff had filed the instant action for recovery of his broker's commission), when defendant caused a Notice of Rescission of the listing to be served on plaintiff. This notice was dated August 11, 1952, and was based upon the alleged grounds of plaintiff's fraud and misrepresentation in securing the listing.

Plaintiff's complaint is couched in the conventional form of a pleading for recovery of a broker's commission. It alleges, in substance, that plaintiff was authorized to sell defendant's apartment house building for the sum of $85,000 upon a 5 per cent commission; that the terms of payment were stated in a writing from defendant's attorney to plaintiff; that plaintiff obtained an offer for the described property from a purchaser ready, willing, and able to complete the purchase upon the terms and conditions prescribed; that defendant refused to consummate the transaction; and that having performed the services called for by the agreement, plaintiff is entitled to his commission. Defendant's answer denying the claim included, as an affirmative defense, allegations that she was induced to list the property with plaintiff as a result of fraudulent representations made to her; that among such representations were the statements that her property was not worth more than $80,000 and that if defendant signed the listing and subsequently decided not to sell at the listed price she was free to withdraw the property; that at the time of the listing, the property had a value of $125,000, a fact unknown to her and known to plaintiff; that she notified plaintiff after he submitted offers of purchase that she did not desire to sell at the stated price and that she desired to take the property off the market and cancel the listing; that on July 11, 1953, she orally notified plaintiff that she rescinded the contract

and listing and would not be bound thereby. Defendant thereafter filed a cross-complaint containing substantially the same allegations as those pleaded in her separate defense to plaintiff's complaint and praying for rescission of the listing. In accordance with the findings, judgment was entered for plaintiff in the sum of $4,250, plus interest and costs of suit and against defendant on her cross-complaint.

The trial court found that the listing here involved included both the real property and the furniture. Over defendant's objection, the court permitted the introduction of evidence of the surrounding circumstances and of discussions between the parties with reference to the listing. Such evidence revealed that at the time the listing was signed, the parties discussed the furniture and defendant directed plaintiff to obtain a list of the furniture; that plaintiff prepared a descriptive "set-up" for use in selling the property which was seen by defendant, in which the units were alluded to as "all furnished but two"; that defendant complimented plaintiff, after an inspection of the set-up, "on the amount of work . . . put into the set-up and inventory"; that defendant informed plaintiff of the gross income from the property and instructed him to secure data as to the income derived from each unit from her manager. As indicated, the property had been bought in 1934 by defendant as a furnished apartment building and had been so operated by defendant subsequently. Defendant does not question the sufficiency of the evidence to support this finding, but urges that the trial court erred in admitting oral evidence "for the purpose of expanding the terms of the listing agreement to include the furniture and furnishings contained in the apartments on the real estate."

The parol evidence above referred to was properly admitted. It was offered by plaintiff, and received by the court, not for the purpose of altering or adding to the listing, but for the sole purpose of clarifying and identifying its subject matter and to assist in interpreting the expressed intention of the parties in the light of the circumstances existing at the time the listing was executed. (*Balfour* v. *Fresno Canal & Irr. Co.*, 109 Cal. 221, 225 [41 P. 876]; *Von Rohr* v. *Neely*, 76 Cal.App.2d 713, 715-716 [173 P.2d 828]; *Gibson* v. *De La Salle Institute*, 66 Cal.App.2d 609, 621-622 [152 P.2d 774].) "For the proper construction of an instrument, the circumstances under which it was made, *including the situation of the subject of the instrument*, and of the parties to it, may also be shown, so that the judge be placed in

the position of those whose language he is to interpret.'' (Emphasis added.) (Code Civ. Proc., § 1860.) Furthermore, as stated in the last paragraph of section 1856 of the Code of Civil Procedure, ''. . . this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section 1860, or to explain an extrinsic ambiguity. . . .'' (Emphasis added.)

█ The listing executed by defendant, taken as a whole, is not so plain or free from ambiguity as to exclude parol evidence to explain it. The listing refers to a 20-unit property located at 25 Westmont Dr., Alhambra, ''occupied by tenants.'' On its face, the listing reflects an intention or understanding to sell investment property consisting of income-yielding rental units currently occupied by tenants. However, an apparent complication is encountered when the premises located at the named street address is disclosed to be a building consisting of *furnished* rental units. The question logically arises as to whether the furniture, which is an integral part of the income-producing operation at the stated address, was intended to be included in the transaction covered by the listing, which is silent on the subject of furniture. Such a situation is a classic illustration of what our statute denominates an ''extrinsic ambiguity'' (Code Civ. Proc., § 1856, subd. 2), namely, an ambiguity that arises when the instrument is read in the light of all the circumstances attending its formulation. (*Pacific Indem. Co.* v. *California Electric Works, Ltd.*, 29 Cal. App.2d 260, 272-273 [84 P.2d 313] ; *Lewis Publishing Co.* v. *Henderson*, 103 Cal. App. 425, 428 [284 P. 713].) Since an extrinsic ambiguity thus appears with reference to the precise property the parties intended to be comprehended within their contract, parol evidence may be resorted to for the purpose of ascertaining the subject matter to which their intention relates. (*Pacific Indem. Co.* v. *California Electric Works, Ltd., supra*; *Gibson* v. *De La Salle Institute, supra*, p. 623; *Reed* v. *Merchants' Mutual Ins. Co.*, 95 U.S. 23, 30 [24 L.Ed. 348].) The court's function is to effectuate the intention of the parties by properly applying their contract to its subject matter. To achieve this purpose, the circumstances under which the contract was made must frequently be considered as an aid to construction. The statutes and cases above clearly recognize that resort may be had to the aid furnished by evidence dehors the writing whenever an ambiguity arises in applying the written instrument to its subject matter.

In the instant case, the listing, unexplained, might be con-

strued either as supporting plaintiff's contention that the premises and furnishings at 25 Westmont Drive were being placed on the market *in toto* as a parcel of income property or defendant's claim that the real property alone was included. Evidence was properly received, therefore, as to "circumstances surrounding the parties at the time they contracted . . . including the object, nature and subject matter of the agreement . . ." in order that the court might "place itself in the same situation in which the parties found themselves at the time of contracting." (*Lemm* v. *Stillwater Land & Cattle Co.,* 217 Cal. 474, 480-481 [19 P.2d 785]; *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 761 [128 P.2d 665]; Code Civ. Proc., § 1860.) Such evidence was not received for the purpose of varying the terms of the listing or impinging on its contents, but to arrive at the intention of the parties with respect to the actual subject matter of the listing. (*First Nat. Bank* v. *Bowers,* 141 Cal. 253, 262 [74 P. 856]; *Weaver* v. *Grunbaum,* 31 Cal.App.2d 42, 48 [87 P.2d 406]; *Lewis Publishing Co.* v. *Henderson, supra.* See *Von Rohr* v. *Neely,* 76 Cal.App.2d 713, 715 [173 P.2d 828]; *Guttman* v. *Berry,* 83 Cal.App.2d 507, 510-511 [189 P.2d 41].) In each of the two cases last cited, involving a lease of property described by street number, this court held admissible parol evidence as to the extent of the property which the parties intended to be covered by the description given. (See also *Aries* v. *Squires,* 105 Cal.App. 414 [287 P. 515].)

Defendant attacks also the finding which reads in part as follows: "That . . . Leroy P. Anderson, attorney at law and attorney for defendant, Mrs. Eben Gauger, acting for her and at her request and in her presence, stated in writing to the plaintiff that the terms which would be acceptable to Mrs. Eben Gauger in connection with said listing were as follows, to wit: $25,000.00 cash down payment, not over $6,000 per year thereafter, including interest at 6% on the deferred payments; . . ." In this connection, defendant argues that the court erred in admitting parol evidence "as to the authority of Leroy P. Anderson to vary the terms of the written listing agreement." ▮ She relies on the rule that where a contract is required to be in writing, the authority of an agent either to make a contract on behalf of his principal or to alter one made by his principal, can only be given by an instrument in writing. Defendant overlooks, however, that there is an exception to the rule last stated which is here ger-

mane, namely, that where the execution of the instrument by the agent is done in the presence of, and with the concurrence of the principal it is regarded in the eyes of the law as the act of the principal. (2 Cal.Jur.2d, "Agency," p. 728, and cases cited.) It is pertinent to observe that the Anderson letter was dictated in the immediate presence of defendant and under her direction. The execution of a document by an agent under such circumstances is, in legal effect, the act of the principal, and is grounded on the doctrine that what an agent does in the presence of and by the direction of his employer is the act of the latter. (*Karns* v. *Olney*, 80 Cal. 90, 97-98 [22 P. 57, 13 Am.St.Rep. 1017]; 2 Cal.Jur.2d Agency, § 73.)

But independent of this rule, defendant's contention is untenable for other compelling reasons. The so-called "equal dignity" rule, embodied in section 2309 of the Civil Code, provides: "An oral authorization is sufficient for any purpose, except that an authority *to enter into a contract* required by law to be in writing can only be given by an instrument in writing." (Italics added.) Clearly, the present case does not involve an authorization *to enter into a contract,* since it was not Anderson, but defendant herself, who entered into and signed the broker's authorization to sell. ■ The purpose of the statute of frauds* in this type of situation being primarily to protect the owner of real property from the claim for commission from a person never authorized to act as his intermediary, the principal element required to be shown in the note or memorandum of the transaction is the fact of employment or authority as a broker subscribed by the party to be charged. (*Toomy* v. *Dunphy*, 86 Cal. 639, 642 [25 P. 130]; *Moore* v. *Borgfeldt*, 96 Cal.App. 306, 309 [273 P. 1114]; *Goodrich* v. *Turney*, 44 Cal.App. 516, 522 [186 P. 806]; *Baird* v. *Loescher*, 9 Cal.App. 65, 68 [98 P. 49].) That is here present. A formal written authorization containing all of the agreed terms is not essential. (*Toomy* v. *Dunphy, supra*; *Moore* v. *Borgfeldt, supra,* 311; *Caminetti* v. *National Guar. Life Co.,* 56 Cal.App.2d 92, 95-96 [132 P.2d 318]; *Herring* v. *Fisher*, 110 Cal.App.2d 322, 329 [242 P.2d 963].) In *Moore* v. *Borgfeldt, supra* (p. 311), it is said: "As we

---

*Section 1624 of the Civil Code reads in part as follows: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . .

"5. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission; . . .."

have pointed out, the writing need not be a complete contract, but only a note or memorandum provided it shows authority to act. When this requirement is met in connection with a definite piece of property, the other terms may be shown by parol.'' An examination of the listing document discloses that whereas virtually all the spaces are either filled in with an entry in writing or marked with a dash, the items relating to terms of payment have been left blank. It is at once apparent that the listing is incomplete with respect to those items, except that the total price of $85,000 is indicated. ■ It is well settled that where the memorandum relating to the contract of employment of a real estate broker is sufficient to show his agency but does not set out all the other terms of the proposed transaction, oral evidence may be admitted to supply the omitted terms. (*Toomy* v. *Dunphy, supra*; *Moore* v. *Borgfeldt, supra*; *Daniel* v. *Calkins*, 31 Cal.App. 514, 517 [160 P. 1082].) ■ It follows that since the statute of frauds governing this type of transaction does not require the terms of sale to be incorporated into the broker's contract of employment, it was unnecessary to show that Anderson was clothed with written authorization to transmit to plaintiff the terms upon which defendant desired to sell. ■ Likewise, there is no merit in defendant's claim that Anderson's letter constituted an alteration of the contract between plaintiff and defendant since Anderson did not have written authority to represent her. This argument is predicated on the hypothesis that defendant listed the property for $85,000 *cash*. But there is nothing on the listing which indicates that the entire price is to be paid in cash. On the contrary, the fact that the space next to the captions ''Down'' and ''Monthly'' were left blank, instead of being filled with a dash or by some notation such as ''cash'' strongly suggests that a sale subject to a down payment and monthly installments on the deferred balance was contemplated. Far from varying the listing, Anderson's letter simply supplied the terms left incomplete in the listing.

The cases relied on by defendant are distinguishable. In both *California Savings etc. Bank* v. *Wheeler*, 216 Cal. 742 [16 P.2d 737], and *Angus* v. *London*, 92 Cal.App.2d 282 [206 P.2d 869], the principal had entered into a written contract. In each case, material alterations in writing were made upon the face of the executed document with the consent of one alleged to be an agent, but having no written authorization.

These alterations constituted a departure from the conditions agreed upon in the contract. No such situation obtains in the case at bar. The other cases cited by defendant relate to the lack of written authority by a purported agent *to enter* a contract binding upon an alleged principal. But that, too, is palpably not the case here.

Defendant contends further that the Mannion offer to purchase was not in conformity with the listing, even as amended by the Anderson letter. She points out that the Anderson letter stated "she is to receive $25,000.00 down payment, and not over $6,000 per year thereafter," including 6% interest on the balance. The Mannion offer, which was accompanied by a $2,500.00 deposit, provided for payment ''within *30 days* from date, as follows, to wit: Cash $22,500.00; Execute—Trust Deed and Note for $60,000 payable $500.00 including 6% interest per mo. Seller to Furnish Termite Clearance.'' (Emphasis added.) Defendant argues that only $2,500 was offered in cash and that credit was required for a period of 30 days for the payment of $22,500. There is no substance in this argument. A similar contention was vainly urged in *Showers* v. *Rober*, 92 Cal.App. 171 [267 P. 884], where a cash "down" payment of $16,300 was required by the defendant vendor's listing. The vendee's offer to the plaintiff broker was accompanied by a deposit check, with the balance to be paid in 30 days. Upon appeal from a judgment in favor of the broker in a suit for commission after defendant had refused the offer, defendant asserted that the offer was one on credit and so was not in accord with the listing. The court rejected this argument and stated (pp. 174-175): ''Appellant argues in support of her second contention that the terms offered by the purchaser are not the same as those contained in the authorization to plaintiff. She points out that by the purchaser's agreement the purchase price was to be paid within thirty days, whereas the agent's authority called for part of the payment immediately ('down') . . . We fail to see any substantial difference between the terms set forth in the purchaser's agreement and the defendant's authorization to plaintiff. The latter is very brief and is silent on most of the points just enumerated. . . . The allowance of thirty days before completing the cash payment cannot be held to be a fatal variance when it is considered that during this period the evidence of title would be produced and the delays customary to the handling of escrows would follow. Moreover, it was the duty of Mrs. Rober to

object to any of these terms of the purchaser's agreement if they did not suit her, so that an adjustment could be made."

*Andrews* v. *Waldo*, 205 Cal. 764 [272 P. 1052] and *Pehl* v. *Fanton*, 17 Cal.App. 247 [119 P. 400], are not apropos. In the *Andrews* case, the purchaser procured by the broker insisted on having thirty days after notice from the seller that the escrow was ready to be closed within which to make his cash payment, and the seller specifically objected to this condition. In the *Pehl* case, the rationale of the decision is that the buyer's offer was not to enter a contract of sale, but merely to obtain an option to purchase.

As a further defense, it is claimed that there is a discrepancy between the terms stated in Mannion's offer to purchase and the listing agreement in that the Mannion offer was conditioned upon the furnishing of a termite clearance by defendant. Because of this, defendant professes to have been under no obligation to go on with the deal or to pay plaintiff's commission. The record shows that at the meeting on June 9th between plaintiff, defendant and Anderson, plaintiff produced the Mannion offer, which was read by both Anderson and defendant. Anderson commented that it complied with the terms stated in his letter. Defendant voiced no objection to any of the terms specified in the offer but asserted categorically that she would not sell her property for $85,000. Under governing principles of law, defendant may not now adopt the position that the Mannion offer, which was substantially in accordance with the listing, did not in every detail comply with its terms. The general rule, in this state and elsewhere, is that where a broker has produced a purchaser in substantial compliance with the terms of a listing, and the owner does not object to the terms of the proposed purchase or the details of performance but states as the reason for his refusal his unwillingness to sell, he may not shift his position, when sued for a commission, and defend upon objections to details that the broker might have supplied or corrected if they had been pointed out by the owner. (*Blood* v. *Shannon*, 29 Cal. 393; *Fiske* v. *Soule*, 87 Cal. 313 [25 P. 430]; *Showers* v. *Rober*, 92 Cal.App. 171, 175 [267 P. 884]; *California Land Security Co.* v. *Ritchie*, 40 Cal.App. 246, 253 [180 P. 625]; *Merzoian* v. *Papazian*, 53 Cal.App. 112, 115 [199 P. 826].) This same rule has been applied and followed in *Sherwood* v. *Rosenstein*, 179 Minn. 42 [228 N.W. 339]; *Braniff* v. *Baier*, 101 Kan. 117 [165 P. 816, L.R.A. 1917E 1036]; *Maksoodian* v. *Keller*, 243 Mass. 249; *Moss* v. *Warns*,

245 Wis. 587 [15 N.W.2d 786, 156 A.L.R. 598]; *Close* v. *Redelius,* 67 Nev. 158 [215 P.2d 659]; *O'Bryan* v. *Linton,* (Fla.) 41 So.2d 169; *Rubin* v. *Hodes,* 84 Ind.App. 578 [150 N.E. 798], as well as in other jurisdictions. We may here take note of recognized exceptions to the general rule. In *Gulart* v. *Azevedo,* 62 Cal.App. 108 [216 P. 405], it is pointed out that a failure to timely specify a particular ground of objection does not preclude the assertion of such ground as a defense if the seller, through no fault of his own, was not aware of the facts giving rise to the grounds of objection. Another qualification of the rule as quoted above is stated in *Russell* v. *Ramm,* 200 Cal. 348, 366 [254 P. 532]: "Where the owner of property refuses to sell to the purchaser procured by the broker upon any ground other than that of the inability of the proposed purchaser to purchase, the owner cannot, in an action against him by the broker for compensation, successfully set up such ground as a defense, unless the fact constituting that ground is included in the agreement between the owner and broker as one of the terms or conditions which must be met or complied with by the broker before he has earned or is entitled to compensation for his services." The factual context here present is not within the scope of the exceptions and falls clearly within the general rule. Having failed to specify her objection to furnishing a termite clearance, an item on which the listing is silent and a matter which the broker might have adjusted or obviated, defendant cannot now defeat plaintiff's right to compensation on such undisclosed ground. "But granting that these asserted differences exist, still they are of no moment, for it clearly appears that the defendant did not object to the proffered contract on these grounds. The rule is established in this state that where an agent produces a purchaser ready, willing, and able to purchase substantially upon the authorized terms, and the vendor fails to reject the offer on the grounds of its variance from the terms given the broker, such difference will be deemed assented to, and the broker will be entitled to his commission." (*Merzoian* v. *Papazian,* 53 Cal. App. 112, 115 [199 P. 826].)

Defendant's final contentions are that plaintiff did not produce a purchaser ready, willing and able to purchase the property and did not perform under the terms of the employment agreement.

 (1) Defendant argues that the deposit receipt signed by the Mannions was merely an offer to enter into an

option agreement, quoting the forfeiture provision thereof.*
This argument is untenable. The receipt clearly states that
the Mannions "agree to purchase said property on above
terms." (*Hansen* v. *Hevener,* 69 Cal.App. 337, 342-3 [231
P. 361].) " 'The ordinary forfeiture provision is for
the exclusive benefit of the vendor, who has an option either
to declare a forfeiture or to enforce the contract' (citation)."
(*Lipton* v. *Johansen,* 105 Cal.App.2d 363, 370 [233 P.2d
648].) The cases cited by defendant, where pertinent, are
distinguishable by the character of the phraseology of the
buyer's offer which was construed as not being a true commit-
ment to purchase.

 (2) Defendant contends the evidence did not show
willingness to buy on the part of both purchasers, since only
Mrs. Mannion testified thereto. Mrs. Mannion's testimony
was sufficient to establish a prima facie case that both proposed
purchasers were willing to complete the transaction. (*Russell*
v. *Ramm,* 200 Cal. 348, 351-2 [254 P. 532].) Furthermore,
the deposit receipt signed by both Mr. and Mrs. Mannion was
in evidence. "The readiness and willingness of a per-
son to purchase is shown when he enters into a contract bind-
ing him to purchase." (*Laack* v. *Dimmick,* 95 Cal.App. 456,
472 [273 P. 50].)

 (3) Finally, defendant insists that no financial abil-
ity on the part of the purchasers was shown by the evidence.
The record does not sustain this claim. The evidence suffi-
ciently supports the finding that the purchasers possessed the
economic means to purchase the property on the prescribed
terms. Mrs. Mannion testified that she had liquid assets in
the form of cash and securities in excess of $85,000 available
to her. She testified positively "I have the money to buy the
property." Defendant introduced not one scintilla of contro-
verting evidence and did not cross-examine this witness. Mrs.
Mannion's testimony made a prima facie showing that the
proposed purchasers commanded the ability to carry through
the transaction had plaintiff not arbitrarily repudiated it, and
cast upon defendant the burden of overcoming such showing.
(*Russell* v. *Ramm, supra,* pp. 351-3; *Ramsdell* v. *Krehmke,*
95 Cal.App. 195, 200 [272 P. 333]; *Pellaton* v. *Brunski,* 69
Cal.App. 301, 306 [231 P. 583].) In the case last cited, the

---

*"If the buyer fails to deposit the money and his instruments and
complete the purchase as herein provided, then the amount paid shall be
forfeited, one half to the real estate broker but not to exceed the
full amount of his commission, and the balance to the seller."

court stated: "Defendant . . . had an opportunity on cross-examination to remove any doubt upon the subject relative to the purchaser's ability. He not only did not avail himself of this right but he likewise failed to offer any independent evidence to disprove it." Under such circumstances, the following language from *Russell* v. *Ramm, supra,* in an almost identical factual situation, is directly in point: "The plaintiff's *prima facie* showing was therefore not broken down; and this being so, it furnished a sufficient basis for the finding of the trial court in the plaintiff's favor upon that issue (p. 353)."

Defendant having frustrated by her own remissness the realization of the contractual objectives, she cannot take advantage of such conduct to efface the broker's right to his commission. (*Richardson* v. *Walter Land Co.,* 118 Cal.App.2d 459, 464 [258 P.2d 42]; *Showers* v. *Rober,* 92 Cal.App. 171, 175-6 [267 P. 884].)

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.