# SAMUEL H. KERFOOT *et al.*

## *v.*

# BERNARD STEELE *et al.*

### *Filed at Ottawa May 15, 1885.*

1. CONTRACT OF SALE OF LAND—*failure of conditions, as rendering the transaction a mere option to sell.* Where a contract for the sale and conveyance of real estate was subject to a condition that if the vendors were unable, by reasonable diligence and expense, to make a good title within ninety days, the contract should be canceled and the deposit made by the purchaser returned to him, and the vendors were unable to make title within the time named, it was *held,* that the contract was no longer binding, and became only an option to sell.

2. PURCHASE THROUGH A BROKER—*compensation of the broker—of the services of the broker having relation thereto.* A person desirous of purchasing certain real estate, employed a real estate broker to negotiate the purchase, and agreed to pay him $3500 in consideration "for his services in connection with the purchase." The agent or broker procured a contract for the sale of the property to be executed by four persons, one of whom had only a life estate in a one-fourth part of the premises, the remainder being in her minor children, so that it became necessary to foreclose a mortgage on the property to pass the title to such fourth interest, which was afterward done. The broker, after having been paid the $3500, as agreed upon, sued his principal to recover for his services in consummating the title, rendered after the date of the contract of sale: *Held,* that the broker's service did not end, under the contract, with the procuring of the agreement to sell, as the purchase was not then completed, and that he could not recover for subsequent services rendered, whereby the title was in fact acquired.

3. So where, it being uncertain whether the sale could be closed, and the purchaser being desirous of renting the property, the broker secured a lease of it for him, which was canceled as soon as he acquired the title through the foreclosure, it was *held,* that the lease was made in the carrying out of the purpose of acquiring the property by purchase, and that the services of the broker in procuring its execution were to be considered as rendered in connection with the purchase, and as paid for in the $3500 allowed him.

4. So where it became necessary for the purchaser to borrow one-half of the purchase money for the property bought, and the broker assisted in negotiating the loan, to enable the purchaser to complete the purchase, without notice that an extra charge should be made therefor, it was *held,* that such voluntary service might be treated as connected with the purchase, and as falling under the contract of employment, and that no recovery in addition to the sum agreed upon could be had for such services.

5. Where a real estate broker is employed, under a special contract, to negotiate for his principal the purchase of real property, at a fixed sum as his compensation for his services in connection with such purchase, his services will not end or his contract be completed until all necessary arrangements are made whereby the principal may acquire the title to the property. It is not enough to procure a contract for a sale from parties who are unable to make a valid conveyance.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. FRANK J. CRAWFORD, and Mr. EMERY A. STORRS, for the appellants:

As a general rule, all that a broker employed to sell land has to do, is to furnish an eligible purchaser. It is then for the principal to decide whether the person thus presented is acceptable. The duties of the broker are at an end, and his commission is earned as soon as an enforceable contract is entered into. *Coleman's Executor* v. *Meade,* 13 Bush, 353; *McGavock* v. *Woodlief,* 20 How. 21; *Koch* v. *Emmerling,* 22 id. 69; *Rice* v. *Mayo,* 107 Mass. 550; *Schmidt* v. *Opie,* 33 N. J. Eq. 140; *Lane* v. *Albright,* 49 Ind. 275; *Moses* v. *Bierling,* 31 N. Y. 462; *Knapp* v. *Wallace,* 41 id. 477; *Barnard* v. *Monnot,* 42 id. 204; *Smith* v. *McGovern,* 65 id. 574; *Glentworth* v. *Luther,* 21 Barb. 145; *Doty* v. *Miller,* 43 id. 529; *Vanlien* v. *Byrnes,* 1 Hilt. 137; *Corning* v. *Calvert,* 2 id. 56; *Lynch* v. *McKenna,* 58 How. Pr. 42; *Chilton* v. *Butler,* 1 E. D. Smith, 150.; *Goldsmith* v. *Obermeier,* 3 id. 121; *Holly* v. *Gosling,* id. 262; *Finnerty* v. *Fritz,* 5 Col. 174; *Phelan* v. *Gardner,* 43 Cal. 306; *Gonzales* v. *Broad,* 57 id. 224; *Watson* v. *Brooks,* 8 Sawyer, (Cir. Ct.) 316; *Vreeland* v. *Vetterlein,* 33 N. J. L. 247; *Bailey* v. *Chapman,* 41 Mo. 536; *Veazie* v. *Parker,* 72 Maine, 443; *Cavendar* v. *Waddingham,* 2 Mo. App. 551; *Same case,* 5 id. 437; *Kentucky Bank* v. *Combs,* 7 Pa. St. 543.

Although there is a special agreement as to the compensation of an agent, it does not follow but that he may be entitled to additional compensation for additional services rendered in reference to his agency.   Dunlap's Paley on Agency, 101, note 1 ; *Perkins* v. *Hart*, 11 Wheat. 237.

Mr. A. M. PENCE, for the appellees :

Where a contract is subject to a contingency, the happening of which suspends the agreement and resolves it into a mere option on the part of the vendors to put an end to it or go on and make their title good, then no title vests in the vendee, and the contract of sale is not complete, and the purchaser obtains no interest in the land.   He does not become a purchaser.   Such was the case of *Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 477.

The so-called contract of purchase provided that no title or rights of ownership should pass to appellees until the delivery of the deed, after examination and approval of title. The title was actually passed under the deed of foreclosure of the mortgage held by the Connecticut Mutual Life Insurance Company, and all services rendered by appellants prior thereto fell under the clause of appellants' contract of employment that all services in connection with such purchase were to be compensated by payment of the $3500 therein provided.

The contract of purchase was not executed by all the heirs of Couch, and the insurance company never consented to the contract.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit by S. H. Kerfoot & Co., real estate brokers, against Steele, Wedeles & Co., to recover commissions for services rendered in respect to a real estate transaction. There was judgment in favor of the defendants, in the circuit

court, which was affirmed by the Appellate Court for the First District, and the plaintiffs appeal to this court.

It appears that Steele, Wedeles & Co. were tenants of a store in the building on the south-west corner of South Water and La Salle streets, in the city of Chicago, whose lease would expire May 1, 1885, and there were tenants of two other stores in the building, whose leases would expire May 1, 1883; that Steele, Wedeles & Co. were desirous of purchasing the whole of that property, and employed S. H. Kerfoot & Co. to act for them, under the following memorandum of agreement:

"CHICAGO, *February 8, 1883.*
"*Messrs. S. H. Kerfoot & Co.:*

"DEAR SIRS—We hereby authorize you, as our agents, to purchase for us, from the Couch estate, for the sum of one hundred and fifty thousand dollars, ($150,000,) the premises known as lot one (1), in block nineteen (19), in the original town of Chicago, fronting eighty (80) feet north on South Water street, and one hundred and fifty (150) feet east on La Salle street, on such terms of payment as may be required by said Couch estate. And in consideration of your services in connection with said purchase, we hereby agree to pay you, as commissions, the sum of thirty five hundred dollars ($3500), said commissions to be paid to you whether said property be bought by or for us, directly or indirectly, in our names or another, or by any one in our interest, whether through you or any one representing said estate, either at public or private sale, or otherwise,—said purchase to be made in the name of Frederic Consor.

STEELE, WEDELES & Co."

"We hereby accept the agency established by the above authority and agreement, upon the terms therein set forth.
*Febr'y 8, 1883.* S. H. KERFOOT & Co."

For some reason, Steele, Wedeles & Co. did not wish their name to appear in the transaction, and the name of Mr.

Consor was used, as above. Thereupon, the plaintiffs, on February 12, 1883, obtained a contract in writing for the sale and conveyance of said premises for $150,000, purporting to be signed by Caroline E. Couch, Caroline E. Johnson, and Elizabeth G. Couch, by William H. Wood, their attorney in fact, and by Howard Potter, by Henry B. Mason, his attorney in fact, parties of the first part, and by Frederic Consor, party of the second part.

The makers of this agreement, of the first part, could not and did not convey the title. As to one-fourth of the interest purported to be contracted for by Caroline E. Johnson, it was only a life estate in her, her minor children owning the remainder in fee. It was found, by advice of counsel, that title could be obtained only through the foreclosure of a mortgage, which was then being foreclosed in the United States court, and which had been executed by Wood, trustee under the will of Couch, to the Connecticut Mutual Life Insurance Company, and passed the fee according to the provisions of the will. It was through foreclosure of this mortgage that the defendants finally obtained title. The $3500, stipulated commissions, was paid. This suit was brought to recover $4700 for services rendered after obtaining the agreement for sale of February 12, 1883, they being claimed to be additional and extra services not covered by the $3500 commission.

The cause was tried in the circuit court, by the court, without a jury, and four written propositions were submitted to the court by the plaintiffs, to be held as law in the decision of the case. The court refused to hold the propositions as law. The first proposition was, substantially, that the plaintiffs were entitled to have from the defendants the $3500 stipulated for, as soon as plaintiffs had obtained the signing of the agreement dated February 12, 1883. The substance of the other propositions was, that all services rendered by the plaintiffs for the defendants after the obtaining of the signing of said agreement of February 12, were additional

services, not covered by the commission of $3500, and that for such subsequent services plaintiffs were entitled to recover what they were reasonably worth.

Counsel for plaintiffs contend that the latter had earned their stipulated commission of $3500 when they had secured the contract of sale of February 12 to be signed, and that all services rendered by plaintiffs after that time were extra and additional, and to be paid for what they are reasonably worth. Defendants' position is, that the $3500 was earned when the title was finally vested in them by the deed of foreclosure of the Connecticut Mutual Life Insurance Company mortgage, and that all the services rendered by plaintiffs were in connection with such purchase, and which they had agreed to render by their written agreement.

Plaintiff's counsel plant themselves on the rule that a written contract for the purchase of an estate, binding both vendor and purchaser, is a sale, within the meaning of an agreement to pay a commission to a broker upon a sale of the estate, although a deed had not been executed and delivered, and say the brokers here obtained a written contract for a sale, and so the purchase had been effected,—that all services in connection with the purchase then came to an end, and that any subsequent services were not in connection with the purchase, but rendered after the purchase had been made. The rule relied upon we do not think can be applied so as to make the contract of sale which was here obtained, to be considered as a completion of the purchase, and an ending of the brokers' services in connection with the purchase, within the meaning of their agreement for commissions. The purchase of the property was to be from the Couch estate. The written contract which was obtained, of February 12, did not purport to be, and was not, an agreement of sale by the Couch estate. It was not an enforceable contract for the title which was in the Couch estate. As to the one-fourth interest which was in the Couch estate, wherein

Caroline E. Johnson had only a life estate, the remainder in fee being held by her minor children, such estate in remainder was not at all represented in the contract, and could not be bound thereby.

Again, the contract of February 12 did not purport to make an absolute sale of the premises. It was subject to conditions, as follows: "*Provided*, the Connecticut Mutual Life Insurance Company assent to such a conveyance: *And provided*, the said party of the first part can, with reasonable diligence and expense, make title to the said lot, piece or parcel of land within ninety days from the execution of this contract, satisfactorily to the said party of the second part. * * * Possession and ownership of said land are to pass to the said party of the second part at the time of the delivery of the deed of conveyance, after title has been examined and approved. * * * In case of the inability of the said party of the first part to make good title within ninety days, as aforesaid, this contract to be canceled, and the $1000 deposit to be returned to the said party of the second part." The parties signing the contract could not make title within ninety days, and there was no binding contract of sale, the agreement becoming but only an option to sell. (See *Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 477.) It does not appear that the consent of the Connecticut Mutual Life Insurance Company to the sale was obtained, but the company sold the property under its mortgage. By the contract the ownership of the property was only to be passed when the deed of conveyance was delivered which passed the title, after the title had been examined and approved. The examiner only passed the title which was made under the foreclosure of the Connecticut Mutual Life Insurance Company mortgage, and upon the delivery of the deed under that foreclosure then only was there a purchase and a passing of the title, either at law or in equity. The plaintiffs' contract of employment was, that for their services in connection with the purchase

they were to have $3500. The services sued for were all performed anterior to the execution of such foreclosure deed, and in and about the consummating of the title in the defendants, and we think may fairly be considered as services "*in connection with said purchase,*" and as covered by the stipulated compensation of $3500.

One of these items for additional services is $1875 for securing a lease of the whole property from Wood, the receiver, to defendants. We understand this came from the uncertainty of the sale being closed, and that in case it was not, defendants were willing to rent the whole property, and so such lease was made, and that the lease was canceled when the deed was made to defendants. The lease was made in the carrying out of the purpose of acquiring the property by purchase. Another item is $750 for negotiating a loan for the defendants on the premises, for the sum of $75,000. It was necessary for defendants to borrow this amount, in order to pay the purchase money,—$150,000. Defendants might well understand, and so take it, in the absence of notification to the contrary, that this was an assistance rendered in connection with the purchase, and under the contract of employment,—and the same may be said with respect to all the services claimed as being additional and extra. Plaintiffs appear to have gone on and voluntarily performed all the services, without intimation that it was not under the written agreement for $3500 compensation. Defendants might very well suppose, under the wording of the agreement, the services were all being done under that agreement, and that $3500 was all they were to pay for whatever plaintiffs did in the matter. To found a claim for additional compensation, fairness would seem to have required that defendants should have been given distinctly to understand, before rendering the services, that additional compensation would be asked for them.

Without special mention of the other items, it may be said they were more clearly services in the effecting of the purchase than the ones above named.

We can not say there was any error in the circuit court's ruling on the propositions submitted, and the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*