[Civ. No. 2600.    Third Appellate District.—May 4, 1923.]

## JOHN GULART, Respondent, v. JOAQUIN B. AZEVEDO, Appellant.

[1] CONTRACTS — UNDISCLOSED MENTAL ATTITUDE. — An undisclosed mental attitude can never constitute the basis of a contractual obligation.

[2] BROKER'S COMMISSIONS—AUTHORITY TO CONTRACT—WHEN COMMISSION EARNED.—Where a real estate broker is employed, under an exclusive agency contract, to "contract with the purchaser for the sale and conveyance" of certain real property, such broker is entitled to the agreed commission only when he has secured a binding contract for the sale of the property upon the terms specified in his contract, and not merely upon the procuring of a purchaser with whom the vendor might so contract.

[3] ID.—PURCHASE SUBJECT TO MORTGAGE—OUTSTANDING CONTRACT OF PURCHASE.—An agreement to purchase land subject to an outstanding mortgage for a specified sum does not constitute an agreement to purchase the land where the title thereto is in a third person and the vendor merely holds a contract of purchase under which such sum is due.

[4] ID. — ADMISSION OF LIABILITY — INCORRECT INFORMATION. — The owner of land cannot be held liable for broker's commissions based upon admissions of liability made by him in letters to such broker, where those admissions were based upon incorrect information given by the broker to the owner.

[5] ID. — POWER OF ATTORNEY — AUTHORITY OF AGENT. — Where the owner of land, after giving a real estate broker exclusive authority to effect a sale of the property upon certain specified terms, executes a power of attorney whereby a third person is given authority "to do all acts necessary or proper for the transfer of any real property or interests therein owned by" the maker, such power of attorney will be construed as authorizing the attorney therein named to make the formal transfer of the property but not as giving him any discretion in fixing the terms and conditions of a sale.    (On denial of rehearing.)

APPEAL from a judgment of the Superior Court of Stanislaus County.    L. W. Fulkerth, Judge.    Reversed.

2.    Effect of contract expressly making broker's right to commission dependent upon sale of property or other condition beyond that ordinarily implied, note, 29 L. R. A. (N. S.) 533.

Performance of contract of real estate broker to find a purchaser, notes, 139 Am. St. Rep. 225; 44 L. R. A. 593.

The facts are stated in the opinion of the court.

Hawkins & Hawkins, L. E. Jones and Rose, Silverstein & Collier for Appellant.

Whitehurst & Logan for Respondent.

FINCH, P. J.—The plaintiff was given judgment for $3,500, with interest thereon, alleged to be due as commissions for the sale of defendant's land. The defendant's motion for a new trial was denied and this appeal is from the judgment.

The court found that on the twenty-fourth day of May, 1919, the defendant executed and delivered to plaintiff a writing containing the following provisions: "I have this day placed with John Gulart for sale the property described on the reverse side of this card, of which I am the owner. The said John Gulart shall have the sole and exclusive agency of the property for nine months from date hereof and I authorize him to sell and convey, and contract with the purchaser for the sale and conveyance by good and sufficient title to said property, according to the prices and terms of payment herein specified. . . . Price of property to be $30,000.00 net. If the said property be sold or disposed of during the period above stated . . . I agree to pay John Gulart a commission as follows: All over and above $30,000.00 when sale is complete. . . . Terms: All cash, or $13,000.00 cash and balance to be encumbrance paid in 8 years from date of sale. Notes to bear interest at 6 per cent."

After the execution of the contract and before any purchaser was found by plaintiff, the defendant went to the Azores Islands, where he remained until after this action was commenced. Before so departing, the defendant duly appointed F. P. Gomez, Jr., his attorney in fact, "with full power and authority to convey real property and interests therein . . . and to accept and receive payment therefor," and informed plaintiff that Gomez "was going to attend to his business" during his absence.

On the fifteenth day of November, 1919, plaintiff, in the name of and as the agent of defendant, entered into an agreement with Mike and George Sequeria for the sale of

the land to them and containing, among other terms, the following: "Whereas, there is a mortgage lien standing of record against said property in the sum of $17,000.00, . . . the party of the first part agrees to sell said sixty acres ranch above mentioned to the parties of the second part for the sum of $16,500.00 cash, and the assuming of said mortgage by said parties of the second part, and the parties of the second part agree to buy said property and pay $16,-500.00 cash therefor, and to assume and pay when due said mortgage of $17,000.00, and said Mike Sequeria has this day paid to said John Gulart, agent as aforesaid, the sum of $1,000.00, which sum shall be held by said agent and at the time of consummating said transfer said sum shall be applied on the cash purchase price." The sum of $1,000 was paid to plaintiff in accordance with the terms of the agreement.

Immediately after the execution of the agreement with the Sequerias, plaintiff exhibited the same, together with the listing contract, to Gomez and told him that he "had got the Sequerias as purchasers and that they were willing to buy the place according to the contract with Azevedo," although neither the plaintiff nor the Sequerias then knew the nature of defendant's title. Plaintiff asked Gomez at that time to execute a deed as defendant's attorney in fact, conveying the land to the Sequerias upon their compliance with the terms of their agreement. Gomez "said it was all right," but declined to make a conveyance on the ground that "he would like to take it up with Mr. Azevedo first," but stated that he would cable defendant regarding the matter and "ask him if it was satisfactory." Plaintiff later cabled the defendant as follows: "I sold your ranch per contract. Approve sale by cablegram at once at my expense." Having received no reply to the cablegram, the plaintiff, on January 17, 1920, wrote defendant, saying: "I have sold your ranch on the following terms per your contract, $13,000.00 cash to you and purchasers will assume contract," and inclosing draft of a quitclaim deed to be executed by defendant and his wife and then forward it to a local bank, with instructions to deliver the same upon receipt of $13,000. Under date of February 14, 1920, defendant wrote plaintiff as follows: "We have been visiting for a few months in Terciara. When we returned we found

the papers and telegram waiting us at the postoffice. I am sending you the paper back as my wife does not want to sign; without her signing nothing else can be done.'' Plaintiff testified that it takes a letter fifteen days or more to reach here from the Azores, and it follows that he could not have received defendant's letter prior to the expiration of his agency.

Shortly after the execution of the agreement with the Sequerias the plaintiff discovered that there was not a mortgage on the land, but that defendant held the property under a contract of purchase from F. T. and V. T. Freitas, in whom the legal title was vested, and that there remained unpaid on the contract price the sum of $17,000, bearing interest at six per cent per annum, the indebtedness being payable in full in about eight years after the date of the listing contract. Plaintiff immediately informed the Sequerias of these facts, but no change was made in the agreement and the evidence does not show that they offered or agreed, during the life of the listing contract, to purchase the property on the terms therein stated, or on any terms other than those contained in their written agreement, or that, during said time, they ever expressed, to plaintiff or to any other person, a willingness, even, to take the property and assume payment of defendant's indebtedness to Freitas brothers. One of the Sequerias testified that they were in fact willing to so take the property, but he did not say that such willingness was made known to anyone. [1] Of course, an undisclosed mental attitude can never constitute the basis of a contractual obligation. After the expiration of the period during which plaintiff was authorized to sell the property, the Sequerias offered to purchase the same and assume payment of the indebtedness to Freitas brothers and indorsed on their written agreement an extension of defendant's time to make the transfer, but defendant had nothing to do with securing such extension, nor did he do anything which would make him a party thereto. No offer by the Sequerias or agreement between them and plaintiff, made after the expiration of the latter's authorization to sell, was binding upon defendant. As stated, plaintiff wrote defendant that the Sequerias had agreed to purchase the land and pay the balance due Freitas brothers. The latter part of the statement, however, was contrary to

the fact. From what has been said it is apparent that plaintiff was not entitled to judgment on the theory that he had procured a purchaser who was ready, willing, and able to buy on the authorized terms, even if it be conceded that, under the listing contract, he would have earned a commission by merely finding such a purchaser and introducing him to defendant, and his right to a judgment, if any, must be founded on his written agreement with the Sequerias.

The complaint alleges, and the court finds, that, at the time the listing contract was executed, it was the understanding of the parties that, if the purchase price was not all paid in cash, the purchaser should assume and pay the balance owing from defendant to Freitas brothers. Plaintiff did not himself so understand, but one of his employees, who procured the contract from defendant, understood the meaning thereof to be as alleged and found, and he so testified at the trial. Appellant contends that this finding is not supported by the evidence. In view of the conclusion reached on other questions, the point so made need not be decided.

[2] The listing contract was not a mere authorization to procure a purchaser ready, able, and willing to buy, but the plaintiff was employed to "contract with the purchaser for the sale and conveyance" of the land. The plaintiff was appointed defendant's agent to execute a binding contract for the sale of the property rather than to find a purchaser with whom the defendant might so contract. The fact that the defendant was about to depart on an extended trip abroad, during which it would be impracticable for him to negotiate directly with a prospective purchaser, and the fact that plaintiff attempted to make a binding contract of sale, throw light upon the intention of the parties. "A broker employed to sell real estate may be authorized and required by the terms of his undertaking, not only to find a purchaser, but even to conclude an actual transfer, or at least to procure from the purchaser a valid written agreement binding him to purchase upon the terms specified; and where this is his undertaking the broker has not earned his commission until he has performed it or the principal has accepted a less complete performance." (Mechem on Agency, 2d ed., sec. 2428.) In *Cunningham* v. *Friendly*, 70 Or. 222 [139 Pac. 928, opinion on rehearing, 140 Pac. 989], the contract under consideration provided:

"We hereby appoint you exclusive agent to make sale of the real property herein described. . . . And you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for sale on our behalf." The court said: "The plaintiff was not employed to find a purchaser for the lots and to bring the purchaser and seller together. . . . Plaintiff relies upon the fact that he brought Rocky and Friendly together, but that does not bring plaintiff within his contract to sell." (See, also, *Bacon* v. *Davis*, 9 Cal. App. 83 [98 Pac. 71] ; *Pfanz* v. *Hamburg*, 82 Ohio St. 1 [29 L. R. A. (N. S.) 533, 91 N. E. 863] ; *Wiggins* v. *Wilson*, 55 Fla. 346 [45 South. 1011] ; *Elliot* v. *Gamble*, 77 Fla. 798 [82 South. 253] ; *Kerfoot* v. *Steele*, 113 Ill. 610; *Burnett* v. *Potts*, 143 Ill. App. 160; *Ormsby* v. *Graham*, 123 Iowa, 202 [98 N. W. 724].)

[3] Plaintiff's right of recovery depends upon whether his agreement with the Sequerias bound them to purchase the land under the terms of the listing contract. The rights of a mortgagor and those of a vendee under a contract of purchase are essentially different. If a mortgagor fails in his payments and the mortgage is foreclosed, he is allowed the statutory period for redemption. No such statutory right is given a vendee under an executory contract of sale. Such contracts frequently provide for the forfeiture of the vendee's rights thereunder on his failure to make payment at the precise time specified. The terms of the contract between defendant and Freitas brothers are not shown by the evidence. If plaintiff relies on their being the same as those of a mortgage, it devolved upon him to establish that fact. It is very clear that the Sequerias were not bound to purchase the property on the terms provided by the listing contract.

[4] In two letters written by defendant prior to his return to this country, he made statements which might be construed as admissions of plaintiff's right to the alleged commissions. These letters were written after plaintiff had informed defendant that the property had been sold in accordance with the terms of the listing contract and that the purchasers would assume payment of defendant's indebtedness to Freitas brothers. An admission based on incorrect information given by the plaintiff is of no weight in his favor. The defendant was not informed of the terms of

62 Cal. App.—8

plaintiff's agreement with the Sequerias during the life of the listing contract, and, therefore, it cannot be held that he assented thereto or waived any objections he may have had to the same. Gomez saw the agreement but it was not shown that he was authorized to sell the property or to change the terms of plaintiff's contract with defendant. It only appears, and that merely by reason of a defective denial in the answer, that Gomez was authorized to convey land and receive payment therefor. Plaintiff himself was given ''the sole and exclusive agency'' for the sale of the land. In attempting to exercise the authority conferred upon him, he made such a mistake that neither the defendant nor the purchasers were bound by the agreement which he executed. After the discovery of such mistake, there remained three months during which he might himself have corrected the mistake if, as he alleges, the Sequerias were willing. His failure to earn the alleged commission, if it be finally decided that he has so failed, is due to his own neglect.

Respondent contends that, by refusing to convey the property on the sole ground that his wife would not sign the quitclaim deed sent to him for execution, the defendant waived all other objections that he had an opportunity to make at that time. The simple answer is that defendant did not then have the opportunity to make the objections here relied on, because of plaintiff's incorrect statement that the land had been sold in accordance with the terms of the listing contract. Had that statement been true, the defendant could have made no objection which would have been a defense to this action.

Some of the denials in the answer are so defective in form as to constitute admissions. The foregoing discussion is based upon the effective denials of defendant. The defendant did not take the witness-stand or offer any evidence, but submitted the case on the evidence produced by plaintiff. It has been assumed, therefore, that all of plaintiff's witnesses are entitled to the fullest credit.

The judgment is reversed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 2, 1923, and the following opinion then rendered thereon:

THE COURT.—In respondent's petition for a rehearing it is urged that "the word 'encumbrance' used in the listing contract . . . was understood by Gulart to mean a mortgage, and that plaintiff was led so to believe by defendant's statements made at the time such contract was executed. It is argued that because the defendant had so misled the plaintiff the latter became entitled to a commission when the Sequerias agreed to purchase the property subject to such mortgage. Counsel, however, overlook the fact that the plaintiff alleged and the court found, on sufficient evidence introduced by plaintiff, that at the time the listing contract was executed "the legal title to said premises was . . . vested in F. T. Freitas and V. T. Freitas, subject to an agreement of purchase and sale whereby said F. T. Freitas and V. T. Freitas agreed to sell said premises to defendant . . . and that at all times said defendant owed the sum of $17,000.00 or thereabouts on the purchase price of said premises under said contract . . . and that at the time of execution of said listing it was the understanding of plaintiff and defendant . . . that in case said purchase price of $30,000.00 was not paid in cash, the purchaser, as part of said purchase price, should assume said encumbrance owing by defendant on said land to said F. T. Freitas and V. T. Freitas and pay same when due."

It is contended that the statement in the opinion to the effect that Gulart was employed to make a sale, rather than merely to procure a purchaser to whom the defendant might sell, is in conflict with the rule announced in *Merriam* v. *Wickersham,* 141 Cal. 567, 570 [75 Pac. 180]. An examination of the transcript in that case discloses that the listing contract there under consideration was unlike the one in this case. By it the owner authorized the agent "exclusively to sell," and "to receive a deposit" and the owner agreed to convey the property "to any purchaser found by" the agent and to pay the agreed commission "if a purchaser is found by or through" the agent. There is no inconsistency between the decision in *Merriam* v. *Wickersham* and the opinion herein or the cases cited therein.

[5] It is insisted that the allegation in the complaint, admitted by a defective denial in the answer, to the effect that Gomez was given a "general power of attorney" by defendant was sufficient to show that Gomez "had power to

act for Azevedo in all things just as Azevedo could have done if personally present, and any act, word, or omission of Gomez which would have rendered him liable if he had been the owner will render Azevedo liable." Plaintiff's allegation, however, goes further than stated. It is alleged that "defendant executed and delivered to one F. P. Gomez, Jr., his certain general power of attorney, in writing, duly executed and acknowledged, in which said power of attorney he appointed said F. P. Gomez, Jr., his attorney in fact with full power and authority to convey real property and interests therein and to execute all necessary and proper transfers and conveyances thereof and to accept and receive payment therefor and, generally, to do all acts necessary or proper for the transfer of any real property or interests therein owned by defendant." "Where the authority to perform specific acts is given in the power, and general words are also employed, such words are limited to the particular acts authorized." (*Billings* v. *Morrow*, 7 Cal. 172, 175 [68 Am. Dec. 235]; *Moore* v. *Gould*, 151 Cal. 723, 728 [91 Pac. 616].) Authority "to do all acts necessary or proper for the transfer of any real property or interests therein owned by defendant" does not include the power to sell land or to agree upon the terms of sale thereof or to modify terms theretofore fixed by the owner, especially where another person has been given exclusive power to execute a contract of sale upon specified terms. The complaint alleges that the power of attorney was executed after the making of the listing contract and before the departure of defendant from California. From the whole of the surrounding circumstances it is apparent that the power of attorney was executed to enable Gomez to make the formal transfer of the property during the absence of defendant and not to give the former any discretion in fixing terms of sale. Gomez had no duty to perform until plaintiff made a sale in accordance with the terms of the listing contract, and no such sale was made, nor was Gomez ever informed that the Sequerias were willing to purchase the land on any other terms than those stated in their agreement with plaintiff, nor did they express such willingness to any person during the life of the listing contract.

It is contended that the answer admits that the Sequerias were "ready, able, and willing to assume the Freitas con-

tract.'' In paragraph IX defendant positively ''denies that Mike Sequeria and George Sequeria agreed or offered to purchase the premises as alleged in the complaint,'' and in paragraph XII he ''alleges that the plaintiff did not at any time procure for the defendant purchaser for the real estate described in the said listing contract ready, and willing and able or ready or willing or able to purchase the real estate therein described upon the terms therein described.'' No objection was made to the sufficiency of such denial and allegation and the case was tried upon the theory that they were sufficient.

The petition for a rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1923.