134 Cal.App.2d Supp. 877 (1955)
A. C. RYLEE et al., Respondents,
v.
NICKOLAS DE FINI et al., Appellants.
California Court of Appeals. 
June 15, 1955.
 Max Z. Wisot and Ted Sullivan for Appellants.
 Vincent S. Dalsimer for Respondents.
 BISHOP, Acting P. J.
 The plaintiffs are faced with a dilemma, as they defend their judgment of $725: if the issues are restricted to the two framed as a result of a pretrial conference, the vital one of those issues must be resolved against them; and if the issues are as broad as the findings, then the evidence fails to support an essential finding.
 The action is one for a broker's commission. As the facts are set forth in the second cause of action of the amended complaint, we must disregard the first cause of action, in which they are pleaded as a common count. (Orloff v. Metropolitan Trust Co. (1941), 17 Cal.2d 484, 489 [110 P.2d 396]; Neal v. Bank of America (1949), 93 Cal.App.2d 678, 681 [209 P.2d 825]; Maselli v. E. H. Appleby & Co., Inc. (1953), 117 Cal.App.2d 634, 627 [256 P.2d 618].) We have, then, an action based upon the theory that the plaintiffs, armed with an exclusive listing, had secured a buyer ready, willing and able to buy according to the terms of the listing. As indicated by the documents attached to the amended complaint, the terms authorized by the defendants were: price $14,500, to be paid as follows: $4,500 cash, seller to carry $10,000 at $100 a month, including interest at 6 per cent. The prospective buyers signed a written offer, whose terms we shall examine in a moment.
 We have no report of the discussion that took place in the pretrial conference, but as the actual trial commenced "the two main issues to be reached in the present trial" were stipulated to be: first, did the plaintiffs on or about November 11 produce to the defendants "a binding contract of sale" in accordance with the terms of the exclusive listing, signed by a buyer ready, willing and able to buy defendants' property; and, second, something indefinite, about a down payment of $500 which proves to be of no concern to us. The trial court found, in one of its Findings of Fact, that the plaintiffs did procure from the buyer "a binding and enforceable written purchase contract (Exhibit 'B' of Complaint) ... and that the terms of said contract of purchase complied with the terms and conditions" of the listing agreement. Unfortunately, for the judgment, the facts are not in accord with this finding; the issue should have been resolved against the plaintiffs. [134 Cal.App.2d Supp. 879]
 The written offer, signed by the prospective purchasers, was never accepted by the defendants, and at no time merited being characterized as a binding contract. However, there is precedent for this unhappy terminology; (for two examples see Barnes v. Osgood (1930), 103 Cal.App. 730, 734 [284 P. 975]; Twogood v. Monnette (1923), 191 Cal. 103, 107 [215 P. 542]) and our conclusion that the finding is contrary to the fact is not a matter of semantics. The price in the listing agreement and the offer were the same: $14,500. In its early passages the offer recited that $500 had been paid as a deposit (the evidence was to the contrary), and that the balance of the $14,500 was to be placed in escrow within 30 days, as follows: $4,500 cash (inclusive of the $500) "balance and terms as follows: Buyer agrees to pay $145.00 & $45.00 down. (sic.) Seller to carry 1st trust deed of $10,000. Payable @ $100.00 or more per mo including interest at 6%. Rylee & Cogburn to get loan on 15123 Cabell for Down payment." We can only interpret the reference to "Rylee & Cogburn to get loan on 15123 Cabell for Down payment" as a condition, which if not met, would release the prospective purchasers from the deal. If so, this was no "binding contract," but a conditional offer.
 Escrow instructions, signed by the prospective purchasers, were received in evidence. These, however, may not be made use of to support the finding that we have been considering. A copy of the "written contract" on which plaintiff relies was attached to the amended complaint as "Exhibit B," and the finding that plaintiff procured "a binding and enforceable written purchase contract" specifically refers to that Exhibit B. The finding may not be interpreted as referring to a different contract.
 It may be that there was no intention of limiting the issues to the two referred to, and as finding III is broader in scope we assume there was no such intention. Finding III--that plaintiff did "produce a buyer ready, willing and able to purchase said property on the terms and under the conditions of said [listing] contract"--however, is not supported by the evidence, whether the offer made by the buyers is found in this deposit receipt or in the escrow instructions. The matter we are about to discuss is a further reason for the conclusion already reached, that on the first issue framed at the pretrial hearing, the evidence fails to support the finding that was made.
 [1] The listing agreement, down in its "contract" provisions, [134 Cal.App.2d Supp. 880] set the price at which the plaintiff was authorized to procure a buyer, at $14,500, upon these terms already noted: "Forty Five Hundred Dollars ($4500) cash, balance as follows: Seller to Car $10,000 at $100. mo. including interest at 6%. Seller Will Consider Sec. T.D.--Buyer to get Top Loan." Up above the "Contract," on this listing agreement under the heading "Remarks: Exchange, Encumbrance, Financing," we find: "Seller will Carry--Submit all Cash offers." We interpret the "Seller to Car" $10,000 at $100 mo., down in the "contract," as meaning that in addition to the $4,500 to be paid as cash, the seller is to receive $100 a month until $10,000 and interest at 6 per cent have been paid. (Unless it means this--it is too uncertain to be valid.) By such an arrangement the seller would have a secured investment, paying 6 per cent interest on a sum varying from $10,000 down to less than $100 over a long period. Looked at another way, the seller would have a secured income of $100 per month spread over a period in excess of 12 years.
 The offer brought to the defendants by the broker, whether we take the deposit receipt or the escrow instructions, was not "on the terms and under the conditions of said contract" to quote from finding III, for in both those writings the prospective buyer retained the right to pay off the whole $10,000 at any time, or to pay greater sums than $100 in any month. The variance between the terms upon which the broker was authorized to "sell" defendants' property and the terms of either "binding agreement" to buy it is not unsubstantial. (See Andrews v. Waldo (1928), 205 Cal. 764, 769 [272 P. 1052].) It is a sort of a variance, no doubt, that must be objected to by the owner, when the terms of the purchase are brought to him, so that the broker may have the variance eliminated, if the purchaser can be persuaded to accept the owners' terms. (Lathrop v. Gauger (1954), 127 Cal.App.2d 754, 767 [274 P.2d 730, 738], and cases cited.) The Lathrop case notes an exception to the rule to which it refers: "a failure to timely specify a particular ground of objection does not preclude the assertion of such ground as a defense if the seller, through no fault of his own, was not aware of the facts giving rise to the grounds of objection." The case of Gulart v. Azevedo (1923), 62 Cal.App. 108 [216 P. 405], is given as an authority recognizing the exception just referred to, and there we find this passage: "Respondent contends that, by refusing to convey the property on the sole ground that his [134 Cal.App.2d Supp. 881] wife would not sign the quitclaim deed sent to him for execution, the defendant waived all other objections that he had an opportunity to make at that time. The simple answer is that defendant did not then have the opportunity to make the objections here relied on, because of plaintiff's incorrect statement that the land had been sold in accordance with the terms of the listing contract. Had that statement been true, the defendant could have made no objection which would have been a defense to this action." The evidence in this case would have warranted a finding that plaintiffs represented that they had a purchaser signed up on defendants' terms, and that neither the deposit receipt nor the escrow instructions were shown to the defendants. There was no finding on this phase of the case. [2] A finding that a purchaser was secured on defendants' terms is not the equivalent of a finding, the effect of which is that defendants waived, or are estopped to assert, that there was a material variance between the terms agreed to by the purchasers and those the broker was authorized to obtain. An excuse for nonperformance is not the same as performance. (Krotzer v. Clark (1918), 178 Cal. 736, 739 [174 P. 657]; Downs v. Atkinson (1929), 207 Cal. 259, 261 [277 P. 723].)
 The judgment is reversed.
 Patrosso, concurred.
 SWAIN, J.
 I dissent. The purchasers signed not only the offer which contained the provision "Rylee and Cogburn to get loan on 15123 Cabell for down payment" but also signed escrow instructions (No. 11279), dated November 4, 1953, in which they agreed to purchase the property on the terms set out in the listing agreement no mention being made as to Rylee and Cogburn getting a loan. In addition to that, a loan escrow was opened (see plaintiff's Ex. F) into which the lender deposited $4,500 with instructions "When escrow closed transfer net proceeds to escrow No. 11279." The defendants and Mrs. De Fini's attorney were informed of this prior to November 11, 1953. It is true that the loan escrow was not opened until November 17, 1953, but the escrows support the finding that on or about the 3d day of November, 1953, "plaintiffs had produced ... a buyer ready, willing, and able to purchase said property on the terms and under the conditions required in said contract."
 The reason which Mr. De Fini gave for not signing the [134 Cal.App.2d Supp. 882] escrow instructions was that he would not sign until his wife signed. Mrs. De Fini refused to sign until the full down payment was deposited in escrow. Neither reason is a defense. Plaintiffs were required to obtain a qualified purchaser before the listing expired but this does not mean the sale had to be completed by that date. The purchaser had a reasonable time thereafter to complete the sale; this included putting the balance of the down payment into the escrow. Laack v. Dimmick (1928), 95 Cal.App. 456, 470-471 [273 P. 50] holds, "It is the contention of defendants that 'under the circumstances of the instant case it is apparent that the purchaser must not only be ready at the time of his announced desire to purchase, but continue to be able to respond as and when the seller presents his deed and certificate of title.' ... The purchaser must be able to buy; and the word 'able' means financially able; this does not mean, however, that such purchaser must have all the money in his immediate possession or to his credit at a bank, but only that he must be able to command the necessary funds to close the deal within the time required. Even where the purchaser was not personally able to buy, it was said that 'it is sufficient if he has arranged so that these funds will be available for payment when the time comes to close the transaction, although part of it be obtained on the purchase property itself.' (Pellaton v. Brunski, 69 Cal.App. 301 [231 P. 583].) It is much more clearly sufficient if the purchaser has assets of greater value than the purchase price and a financial rating which will enable him to command the funds when needed. For in such event the purchaser is not only able to purchase but is able to respond in damages if he refuse to go ahead with the contract. Furthermore, the contract of sale provided that the balance of the purchase price was payable 'within ... days' from date upon the execution and delivery of a deed and a guarantee certificate of title showing title in the owner. Where a contract for the sale of realty does not fix the time for final payment, a reasonable time is allowed. (McGibbon v. Schmidt, 172 Cal. 70, 75 [155 P. 460].) Or, to state it in other words, the rule that a purchaser must be ready, willing, and able means, where no time is fixed in the contract, that he must be ready, willing, and able to carry out the purchase within a reasonable time. (Bunyard v. Farman, 176 Mo.App. 89 [161 S.W. 640].)"
 I would affirm the judgment.