[Civ. No. 15. Fifth Dist. Feb. 20, 1962.]

JOSEPH BORN, Plaintiff and Respondent, v. ABE F. KOOP, Defendant and Appellant.

Lerrigo, Thuesen, Thompson & Thompson and Donald C. Thuesen for Defendant and Appellant.

John P. Zylka for Plaintiff and Respondent.

BROWN, J.—This is an appeal from a judgment in favor of plaintiff for $3,090 plus costs of suit and interest, for commissions due on a sale of real estate.

Defendant executed a written authorization to sell which employed plaintiff exclusively for a period beginning January 1, 1960, up to and including February 15, 1960, to sell certain real estate in Fresno County on the following terms of sale:

1. Purchase price, $2,500 per net acre;

2. Purchase price payable 29 per cent down, or $15,000, and balance in 15 yearly payments, balance to be secured by deed of trust;

3. Interest on balance at the rate of 6 per cent per annum;

4. Seller will subordinate and give a release clause to a qualified builder;

5. Seller will furnish title insurance;

6. Seller will accept a deposit on terms as specified in the authorization, and forfeiture clause of deposit;

7. Seller will pay 6 per cent commission whether said property be withdrawn from sale, transferred, conveyed or leased without approval of said broker.

On February 13, 1960, plaintiff obtained a proposed buyer, John Bonadelle, who signed a California Real Estate Association standard form of deposit receipt which provided as follows:

1. Purchase price, $2,500 net per surveyed acre;

2. Buyer to deposit in escrow balance of purchase price within 90 days from date of acceptance by seller as follows: 29 per cent down; execute a note and deed of trust for balance payable in 15 equal installments or more plus interest at 6 per cent on unpaid balance;

3. Trust deed to contain usual release and subordination clause;

4. Deposit receipt contained other standard printed provisions;

5. This offer shall be deemed revoked unless accepted in writing within 10 days after date hereof, and such acceptance is communicated to buyer within said period;

6. The following words appeared in a "box" below the signature: "Buyer to take title in name of John Bonadelle or Nominee."

7. Deposit of $200 accepted. The buyer deposited the sum of $200 with the deposit receipt.

There was a sharp dispute in evidence. Plaintiff testified that on Saturday, February 13, 1960, and on Sunday, February 14th, he telephoned defendant's home numerous times; that on each of those dates he spoke to defendant's wife and asked her to have defendant return his call and also told her the property was going into escrow; that he was finally successful in reaching defendant by telephone on the evening of February 14th; that in that one conversation he advised defendant that the property had been sold but did not advise him of the contents of the deposit receipt; that he offered to bring the deposit receipt to defendant's home; that defendant refused to permit him to come to his home but instead made an appointment to meet at plaintiff's office at 9 o'clock a. m. on Monday, February 15th, to consummate the transaction; that defendant failed to keep the appointment; that later, on February 16th, one Brown, an employee, informed plaintiff that defendant had telephoned and stated he was withdrawing the property from the market and that he received no further communication from defendant except a letter dated February 17th in which defendant stated that he withdrew the property from the market. Without further notice or contact, plaintiff filed his complaint for commissions dated February 26, 1960, on February 29, 1960. Both defendant and his wife testified that no telephone calls made by plaintiff were received at their home on February 13th, 14th or 15th; and that after the listing had expired and on or about February 16th or 17th, the telephone conversation in which defendant made an appointment to call at plaintiff's office took place. Defendant testified that the appointment was a tentative one only, and was not kept by defendant for the reason that he was busy elsewhere; that defendant did not know at the time he made the appointment that it related to a sale of his property but believed the plaintiff wanted to see him about some surplus dirt which he had available for sale. He testified positively that he did not want to sell the property after February 1, 1960, or on February 15th, but later testified he would sell on February 15th only because of the listing. The defendant testified he made no effort to find out what kind of deal plaintiff had pending and plaintiff made no further effort to contact defendant. The trial court accepted the testimony of plaintiff as true. It is stated in 4 California Jurisprudence 2d, Appeal and Error, section 605, pages 484-485, as follows: "Credi-

524

bility of Witnesses.—The amount of credit to be given to the positive testimony of a witness is solely a question for the trial tribunal. . . ."

In the amended findings, the trial court found that the plaintiff did procure one John Bonadelle, who was then and there and continuously thereafter at all times relative to this action, ready, willing and able to purchase said real property upon the seller's terms and conditions hereinabove set forth by the plaintiff and defendant. But in the court's conclusions the court further said that the defendant by his acts and conduct waived any objections, if any, he had to the form of the contract signed by John Bonadelle.

In *Rylee* v. *DeFini*, 134 Cal.App.2d Supp. 877, 881 [285 P.2d 115], the court said: "A finding that a purchaser was secured on defendants' terms is not the equivalent of a finding, the effect of which is that defendants waived, or are estopped to assert, that there was a material variance between the terms agreed to by the purchasers and those the broker was authorized to obtain. An excuse for nonperformance is not the same as performance. (*Krotzer* v. *Clark*, 178 Cal. 736, 739 [174 P. 657] ; *Downs* v. *Atkinson*, 207 Cal. 259, 261 [277 P. 723].) "

We believe, based on the testimony in this matter, that the court erred in its findings and conclusions. We agree with the defendant's position that the deposit receipt, when read with the authorization to sell, did not and could not form a contract between Bonadelle, as purchaser, and the defendant, as seller. The variations set out in the deposit receipt preclude it from being an acceptance under the terms of the offer, and it constitutes a mere counteroffer which defendant was under no duty to accept or reject.

Section 1585 of the Civil Code provides: "An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal."

In *American Aero. Corp.* v. *Grand Central Aircraft Co.*, 155 Cal.App.2d 69, 79 [317 P.2d 694], the court said: "An acceptance, to result in the formation of a binding contract, must meet exactly, precisely, and unequivocally the terms proposed in the offer."

The court, during the trial of the present case, also mentioned that the deposit receipt involved here was actually a counteroffer.

Under California law, a counteroffer is a rejection of

a previous offer, as is covered in *People* v. *Twedt*, 1 Cal.2d 392 [35 P.2d 324], where the court said at page 397, quoting from section 38 of the Restatement of Contracts, as follows: "A counter-offer by the offeree, relating to the same matter as the original offer, is a rejection of the original offer, unless the offeror in his offer, or the offeree in the counter-offer states that in spite of the counter-offer the original offer shall not be terminated."

Thus, as a counteroffer, this was actually never communicated to the defendant at any time.

■ From the examination of the deposit receipt it is our opinion that the most serious deviation from the listing agreement which provides that the balance is ". . . to be paid in yearly payments on a 15 year payoff plus interest at 6%" is that deviation in the deposit receipt which provides ". . . balance of purchase price payable in Fifteen equal installments or more plus interest at 6% on the unpaid balance. . . ." The effect of the added words "or more" would seem to enable the purchaser to pay the balance in 15 equal installments monthly, yearly, or otherwise, or to pay more in one particular installment than another, or all in one installment. In the latter event, accelerated payments would have a serious income tax consequence for the defendant. We believe this is a serious substantial deviation from the authorization agreement and thus, definitely makes the deposit receipt a counteroffer. There was no testimony on this phase of the deposit receipt whatsoever.

In the case of *Jepsen* v. *Marohn*, 22 S.D. 593 [119 N.W. 988, 21 L.R.A. N.S. 935], the court said that where the realtor was employed to sell the property for $4,200, with $2,200 down, and the realtor brought in a buyer who wanted to pay $4,200 in cash, that the realtor would not recover because he had not produced a buyer ready, willing and able to purchase the land under the terms authorized.

In *Rylee* v. *DeFini*, *supra*, the buyer met all of the terms of the agreement with the exception that payments of $100 per month had the addition "or more" and the payment of the $10,000 balance at any time. The court said at page 880: "The variance between the terms upon which the broker was authorized to 'sell' defendants' property and the terms of either 'binding agreement' to buy it is not unsubstantial."

The court also refers to *Andrews* v. *Waldo*, 205 Cal. 764, 769 [272 P. 1052]; *Lathrop* v. *Gauger*, 127 Cal.App.2d 754,

767 [274 P.2d 730, 738]; and *Gulart* v. *Azevedo,* 62 Cal.App. 108 [216 P. 405].

There are several other deviations from the seller's terms in this deposit receipt. ▇▇▇ The deposit receipt calls for the down payment to be placed in escrow within 90 days from the acceptance by the seller which could also be extended for one month by the broker, and we feel that this is likewise a serious deviation, for though we see no harm in the 10-day period being allowed for the seller to exercise his acceptance, the fact that the buyer has ninety days in which to put up the down payment is opposite to the authorization agreement which states that the property is to be sold for 29 per cent down.

In *Dea* v. *Davy,* 150 Cal.App.2d 435 [309 P.2d 894], the purchaser signed a written offer acknowledging payment of $600 on deposit with the balance of $5,400 to be deposited within 30 days from date. The owner did not approve the deposit receipt and the court held that this variance amounted to rejection of the defendant's terms and the making of a new proposal which the defendant declined to accept, and the judgment of nonsuit was affirmed.

In *Russell* v. *Ramm,* 200 Cal. 348 [254 P. 532], the down payment was supposed to be $35,000 and the buyer deposited $1,000, with the balance of the down payment to be paid as soon as the abstract of title was furnished. In this case the court did hold that this was within the terms and conditions of the listing agreement. But this case has generally been overruled by *Andrews* v. *Waldo,* 205 Cal. 764 [272 P. 1052]. Here, the seller's authorization was for $60,000 payable $30,000 cash and the balance by note. The buyer's offer was for $60,000, $500 to be deposited, and $29,500 cash payable 30 days after notice that the owner was ready to convey the property, and a $30,000 note for the balance. In the lower court the defendant moved for a nonsuit, which was granted, and this was reversed in the District Court of Appeal (265 P. 532) on the ground that the sales deposit receipt was in compliance with the contract and that the defendant was guilty of bad faith in failing to conclude the transaction. The Supreme Court reversed this decision, stating that the nonsuit was properly granted and that the seller's refusal to sign the sales deposit receipt was justified and that he was acting in good faith.

It is certainly recognized that in today's real estate transactions sales of real estate are handled in escrows, but this

is only for a reasonable period of time, and to allow the buyer 90 days after the deal is accepted by the seller strengthens the fact that this is a counteroffer.

The defendant complains that the words ''Buyer to take title in name of John Bonadelle or Nominee'' constitute a part of the deposit receipt agreement even though the signature is above that phrase. We do not feel that this addition is a serious deviation. This matter of nominees is covered in *Tynan Lumber Co.* v. *W. A. Hammond Co.*, 124 Cal.App. 159, 164 [12 P.2d 45], where the court said:

''The point that respondent is not bound by the stipulation in the order contract excluding other agreements because respondent's signature appears above that portion of the contract is not sound. The order was plainly printed on a single sheet of paper; the clause at the end was not hidden or disguised in any manner; it was emphasized by capital letters as in the copy appearing in the forepart of this opinion.''

In the instant case the words are printed at the bottom of the face of the deposit receipt. The clause is not hidden or disguised in any manner, and it is emphasized in that it is embraced within a line forming a box around it.

Mr. Bonadelle testified that he does not buy any property unless title may be taken in the name of John Bonadelle or nominee; that that is the way he buys his land; that during the past year he bought sixteen subdivisions and all were bought in that manner, in accordance with instructions from his office. The parol evidence of Mr. Bonadelle explains any ambiguity which may have existed as to the intent with which he signed the deposit receipt, and it appears that under the law and the facts, the words constitute a part of the counteroffer.

The problem then arises as to the legal effect of the words ''or his nominee.'' In the case of *Cisco* v. *Van Lew*, 60 Cal.App.2d 575 [141 P.2d 433], J. H. McGuire, a real estate agent acting pursuant to a listing, purported to sell property to plaintiff Cisco. The pertinent part of the escrow instructions read, ''. . . showing title vested in J. H. McGuire, a married man, or his nominee.''     In determining that plaintiff Cisco could not enforce the land sale contract because he was not a party to it, the court, at pages 583-584, said:

''The word 'nominee' in its commonly accepted meaning, connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote

the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him.

"In *Schuh Trading Co.* v. *Commissioner of Internal Revenue*, 95 F.2d 404, 411, the court stated: 'The word nominee ordinarily indicates one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, in representation of another, or as the grantee of another.'

"In the absence of an assignment from McGuire to the Ciscos or some other effective substitution of the Ciscos for McGuire as the purchasers, no rights become vested in the Ciscos which they are entitled to assert on their own behalf independently of McGuire."

The definition of "nominee," as set out in the *Cisco* case, was quoted with approval and followed in *Ott* v. *Home Savings & Loan Assn.*, 265 F.2d 643.

It therefore appears that John Bonadelle, alone, was the purchaser offered by plaintiff in the instant case, and that any nominee he might have designated would be his mere representative.

To allow the seller to have 10 days in which to approve or disapprove of the buyer's offer is reasonable and is for the benefit of seller, as stated in *Lipton* v. *Johansen*, 105 Cal.App.2d 363, 370 [233 P.2d 648]: " 'The ordinary forfeiture provision is for the exclusive benefit of the vendor, who has an option either to declare a forfeiture or to enforce the contract.' (25 Cal.Jur. 608, § 113, and authorities there cited.)"

The term "usual release and subordination clause" in buyer's deposit receipt is very vague and is not clear whatsoever. It does imply that the buyer would have the right to obtain subordination on the first deed of trust to anyone he may wish for any amount. The seller's clause which stated "Seller will subordinate and give a release clause to a qualified builder" limits the matter to a qualified builder and there is no doubt from the testimony that Mr. Bonadelle was a qualified builder but to allow him to further subordinate is a deviation and could work to the complete detriment of the seller.

The plaintiff relies on the case of *Showers* v. *Rober*, 92 Cal. App. 171 [267 P. 884]. In this case the purchaser's agreement deviated from the authority to sell and the court, at pages 174-175, outlined the deviations as follows:

". . . by the purchaser's agreement the purchase price was to be paid within thirty days, whereas the agent's authority called for part of the payment immediately ('down'); the purchaser was to be given possession within ninety days from said date instead of thirty days; that the evidence of title to purchaser from owner was to be guaranteed by a responsible title company at the expense of owner; that if improvements were destroyed or materially damaged between date of agreement and consummation of sale, purchaser might at his option declare it null and void; that taxes for the then fiscal year ending June 30th next and insurance, rents, etc., were to be prorated; that the property was sold subject to the approval of owner; and that time was of the essence of the agreement. We fail to see any substantial difference between the terms set forth in the purchaser's agreement and the defendant's authorization to plaintiff. The latter is very brief and is silent on most of the points just enumerated. Some of the terms proposed would be supplied by law if not specifically set forth in the agreement. The purchaser's agreement contains merely the items which are generally found in instruments of this kind.'' The distinction between the *Showers* case and the present case is that at no time did the seller ever see the deposit receipt or know its contents, and therefore, could not point out any of its objections as the plaintiff did not present the deposit receipt to him or send him a copy of the same or make any effort to let him know what was in the deposit receipt until, we assume, the date of trial.

In *Gulart* v. *Azevedo,* 62 Cal.App. 108 [216 P. 405], the realtor cabled the seller that he had found a buyer on the seller's terms but without specifying what the variations were, and there, it was stated that a failure to timely specify a particular ground of objection does not preclude seller's asserting such defense if seller, through no fault of his own, was not aware of the facts which might have given rise to such grounds of objection.

We think this is different from *Merzoian* v. *Papazian,* 53 Cal.App. 112, 115 [199 P. 826], where the court said: ''But granting that these asserted differences exist, still they are of no moment, for it clearly appears that the defendant did not object to the proffered contract on these grounds. The rule is established in this state that where an agent produces a purchaser ready, willing, and able to purchase substantially upon the authorized terms, and the vendor fails to reject the offer on the ground of its variance from the terms given the

broker, such difference will be deemed assented to, and the broker will be entitled to his commission."

In this case the terms did match each other except that the seller demanded the payment in gold and did not give the purchaser time to go out to the bank and get it. The seller also said, "You need not go because I don't want to sell the property under those terms anyway."

The deviations in the present case are very material and substantial as far as the payments of the balance are concerned. The plaintiff did not bring to defendant a party who was ready, willing and able to purchase the property involved on the seller's terms, and thus, did not earn his commission. ▮▮▮▮ The right to a commission is governed by the rule set out in *Twogood* v. *Monnette,* 191 Cal. 103, 107 [215 P. 542], as follows:

". . . that a broker employed to sell real or personal property has earned his commission when, within the life of his contract, or any extension thereof, he has produced a person who is ready, willing, and able to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on the terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale, or has produced such a purchaser who has verbally accepted the seller's terms and offered to enter into a written contract embodying the said terms and binding upon both parties. In such cases the broker's right to commission accrues when the contract of sale is executed, or when opportunity to make such contract is given the seller, and the broker becomes entitled to his commission even though the seller is unable or unwilling to complete the sale."

The deviations are substantial and Mr. Bonadelle does not fall into the category of a buyer ready, willing and able to purchase the property on the seller's terms.

Assuming that the plaintiff did bring a buyer to the seller with such deviations as herein outlined, was the defendant, as seller, estopped by acting in such a way as to mislead the plaintiff and did the plaintiff reasonably rely upon this to his injury? Or, did the defendant waive whatever rights he may have had to reject the counteroffer or to object to the terms of the deposit receipt by not keeping his appointment with the plaintiff or evading the plaintiff? This position was not pleaded, but came out in plaintiff's examination of defendant.

The theory of estoppel is set forth in *Safway Steel Products, Inc.* v. *Lefever,* 117 Cal.App.2d 489, 491 [256 P.2d 32].

The defendant did not know the terms of the deposit receipt and made no effort to do so, but he is under no duty to do so. (See *Warfield* v. *Richey,* 167 Cal.App.2d 93, 98 [334 P.2d 101] ; and *Bisconer* v. *Billing,* 71 Cal.App. 779 [236 P. 329].)

As to defendant's conduct of silence, does it allow the plaintiff to assert estoppel? ▮▮ See *Newhall* v. *Hatch,* 134 Cal. 269 [66 P. 266, 55 L.R.A. 673], where the court said, at page 274: "Mere silence on the part of a party will not create an estoppel, unless he was under some obligation to speak, and a party invoking such estoppel must show that it was the duty of the other to speak, and that he has not only been induced to act by reason of such silence, but that the other had reasonable cause to believe that he would so act."

▮ The party seeking to establish the estoppel must have been ignorant of the facts, and in this case the plaintiff was the one party who was aware of the terms of both the offer and the counteroffer. (*Gulart* v. *Azevedo,* 62 Cal.App. 108 [216 P. 405].)

▮ The plaintiff did not show in what manner he had relied upon any action of the defendant to his injury. It is doubtful in this case that the silence of the defendant could have created an estoppel. (*Crothers* v. *General Petroleum Corp.,* 131 Cal.App.2d 98, 105 [280 P.2d 182] ; *C.I.T. Corp.* v. *Hawley,* 34 Cal.App.2d 66, 72 [93 P.2d 216].)

▮ The burden is on the plaintiff to establish the elements of estoppel. (*Bear Creek Co.* v. *James,* 115 Cal.App.2d 725, 732 [252 P.2d 723].)

▮ The doctrine of estoppel is to be applied strictly and must be established in every particular. (*Bear Creek Co.* v. *James, supra.*)

As to the theory of waiver, the defendant must have an actual intent to waive any right he may have had. (*Verdier* v. *Verdier,* 133 Cal.App.2d 325, 332 [284 P.2d 94] ; *Craig* v. *White,* 187 Cal. 489, 498 [202 P. 648] ; *Chase* v. *National Indemnity Co.,* 129 Cal.App.2d 853, 858 [278 P.2d 68].)

▮ It is difficult to see how the plaintiff could have been mislead by any conduct on the part of the defendant, as it would have been impossible for the defendant to have waived a right of which he obviously had no knowledge.

Generally, in these cases involving a real estate commission or sale of property, the seller is apprised of the purchaser's

proposal and either assents to or makes no objection to the terms thereof and subsequently either flatly refuses to sell, or attempts to raise the question of substantial variance after expiration of the listing.

In *Showers* v. *Rober, supra,* 92 Cal.App. 171, the purchaser's agreement deviated slightly from the broker's authority. Apparently the seller did not know of the deviations and when the broker called upon her and advised her that the property had been sold she shut the door in his face and directed him to talk to her husband. The husband stated that his wife should not have listed the property and that he would keep her from selling it if he could. At pages 175-176, after discussing the variances, the court said:

"Moreover, it was the duty of Mrs. Rober to object to any of these terms of the purchaser's agreement if they did not suit her, so that an adjustment could be made. . . . Mrs. Rober not only failed to point out wherein any of the terms of the purchaser's agreement were unsatisfactory, but she precluded the possibility of completing the sale by shutting the door in her agent's face and refusing to discuss the matter further. She is not now in position to deny his right to the commission earned. The record discloses that plaintiff procured a purchaser for the porperty and that he did everything in his power to consummate the sale. He was prevented from doing so by the conduct of the defendant."

But the court also said, "We fail to see any substantial difference between the terms set forth in the purchaser's agreement and the defendant's authorization to plaintiff." Here, the commission was upheld.

This matter is discussed thoroughly in volume 156 of the American Law Reports Annotated, page 598, which cites the case of *Moss* v. *Warns,* 245 Wis. 587 [15 N.W.2d 786, 156 A.L.R. 598]. The commission was allowed. However, in that case the seller had the opportunity to observe the discrepancies between the terms of sale in the listing agreement and the deposit receipt and failed to specify his objections thereto when the purchaser was brought to him, stating that he had decided not to sell since his wife would not consent.

In *Beazell* v. *Kane,* 127 Cal.App.2d 593, 595 [274 P.2d 224], the court said: "It is the general rule that when a broker is duly employed to effect the sale of realty, he is entitled to the agreed compensation after he has procured a buyer ready, willing and able to buy on the terms prescribed in the contract of employment within the time limit."

In the present case, if the plaintiff, as agent, had the buyer execute a deposit receipt which was exactly on its face the same as the authorization to sell, there is no doubt that the plaintiff, as agent, would be entitled to his commission as the defendant would be bound to complete the sale even though he said he wanted to withdraw the property from the market and made himself unavailable.

We believe, in the instant case, that the findings of fact and conclusions of law were not correctly based on the substantial evidence introduced in this matter; that the deposit receipt was an actual counteroffer; that said deposit receipt deviated materially from the authorization to sell; that the plaintiff is not entitled to his commission; and that the judgment should be reversed.

The judgment is reversed.

Conley, P. J., and Stone, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 18, 1962.